## JACKSON, on the Demise of BARTHOLOMEW and Others, Trustees of CLARKSVILLE, v. HUGHES and Another.

The trustees of a town, by resolutions of the board, granted to *A.*, his heirs and assigns, the rights and privileges of certain real estate, for the purpose of opening a canal or building a mill of public utility thereon; annexing to the grant a condition, that the improvements should be made within a certain time. For these privileges, *A.* was to pay a certain per cent. on the proceeds of the improvements. *A.* assigned his interest to *B.* The legislature of the late territory afterwards, on the petition of *B.* and of some of the trustees individually, passed an act vesting the fee-simple in the former, subject to the condition contained in the resolutions. *B.* occupied the premises; erected thereon an expensive mill; and paid to the trustees the per cent. on the proceeds, in compliance with their demand. Ejectment by the lessee of the trustees.

*Held*, that it is generally necessary, in ejectment, for the plaintiff to show a right of possession in his lessor at the date of the demise, and at the time the action was commenced.

*Held*, also, that the legal effect of the resolutions of the board was not affected by the territorial statute, passed on the petition of *B.* and of some of the trustees individually; the petition being of no consequence, and the legis-

May Term, 1826.

JACKSON
v.
HUGHES.

lature having no power to transfer, at pleasure, an estate not belonging to the territory.

*Held*, also, that by their demand and receipt of the per cent. on the proceeds of the mill, the trustees admitted the improvements made, to be conformable to the condition annexed to the resolutions;—and that the moral policy of the law prohibited them from contending, that their title did not authorize the grant.

*Held*, also, that the resolutions, being neither deeds nor matters of record of a Court of record, cannot operate as a freehold conveyance, either according to the common law or to the statute of uses;—that they constitute, the condition being performed, a lease for an indeterminate period, with a reservation of rent;—and that the relation of landlord and tenant which they create, prevents the occupant under them from disputing the title of the trustees.

*Held*, also, that the interest granted to *A.* would have been formerly a tenancy at will, which his assignment would have determined; but that the old tenancies at will being now generally superseded by tenancies from year to year which are assignable, his estate for no expressed period with a reservation of rent, belonged to the latter class and passed to *B.* by the assignment.

*Held*, also, that before the trustees could recover in this action of ejectment, which treats the defendant as a trespasser, it was necessary for them to put an end to the tenancy, by giving to the proper person half a year's notice to quit, at that period of the year when the tenancy commenced.

*Tuesday, May 2.*

APPEAL from the *Clark* Circuit Court.

BLACKFORD, J.—This was an action of ejectment for 500 acres of land in *Clarksville*, county of *Clark*. *Palmer*, the tenant in possession, and *Hughes*, his landlord, were admitted defendants upon the usual terms. The evidence in the cause was in substance as follows:—

I. On the part of the plaintiff. 1st. The original book of surveys of *Clark's* Grant, containing a map and description of 1,000 acres of land on the north-west bank of the *Ohio* river, surveyed for the town of *Clarksville* agreeably to a law of *Virginia*. 2ndly. The record book of the proceedings of the trustees of *Clarksville*, showing that at the time of the demise laid in the declaration, the lessors of the plaintiff were the trustees of *Clarksville*. 3rdly. That at the commencement of the suit, *Palmer* was in actual possession of a strip of ground lying between the lots of *Clarksville* and the *Ohio* river, and claimed the same as the tenant of *Hughes*, the other defendant.

II. On the part of the defendants. 1st. A resolution of the board of trustees of *Clarksville*, in 1803, granting to *William Clark*, his heirs and assigns, the rights, privileges, and advantages of a strip of ground between the town lots and the river, to

be appropriated to the use of opening a canal through any part of it, on which to erect mills, &c., and for the erection of locks for the passage of boats. For these privileges, the grantee was to pay the trustees one per cent. on the production of all water works on the canal, and five per cent. on the toll of boats passing through it. To which grant was added a proviso, that the canal should be completed within seven years. Also, another resolution of the board, in 1807, upon the memorial of *Clark*, praying that the time for performance of the said condition might be enlarged. This resolution, though somewhat doubtful, is considered so to modify the other as to give the grantee a choice, either to open a canal, or to erect a mill of public utility upon the premises, within ten years from the date of the first resolution. 2ndly. An act of the legislature of the *Indiana* territory, in 1810, vesting in *Daniel Fetter*, *James Hughes*, and *Salmon Fuller*, the fee-simple of the premises, subject to said conditions. Also, parol testimony that several of the trustees had, individually, signed a memorial to the legislature to procure the act. 3rdly. That *Fetter*, *Hughes*, and *Fuller*, entered into possession of the premises under the said resolutions, and in 1810 built a saw-mill thereon, which was soon after swept away, and in 1812, a grist-mill of public utility, which still remains; and expended in these improvements between 12,000 and 20,000 dollars. 4thly. Orders of the board of trustees in 1816, and 1817, requiring from *Fetter* and *Hughes* as assignees of *Clark*, a statement of the production of the mills, canals, &c., erected on the land granted as aforesaid by the board, and demanding payment of the per cent. then due, amounting to 69 dollars. Also, a receipt showing that the money had been paid in compliance with these orders of the board.

The foregoing, as the record informs us, was all the evidence given in the cause, except derivation of title from *Clark*, the. original grantee, to *Hughes*, one of the defendants. Upon the testimony being closed the Court below, at the request of the defendants, instructed the jury "that the trustees of *Clarksville* could not make a demise, which would support an action of ejectment." The jury returned a verdict for the defendants, and the Court rendered judgment accordingly. The plaintiff, by means of a writ of error, has submitted to our decision the correctness of the instruction given to the jury by the Court.

May Term,
1826.

JACKSON
v.
HUGHES.

below, upon the evidence in the cause as spread on the record by a bill of exceptions.

Whatever may have been the precise meaning of the Court by the instruction given, it is evident the jury might have fairly understood them to say, that the evidence of the cause did not show such a title in the plaintiff's lessors, at the time of the demise laid in the declaration, as would justify their recovery in the ejectment then pending; and it is therefore in that sense that this Court must also understand the instruction. Hence the case comes before us in the same point of view, as if upon a verdict for the defendants there had been a motion for a new trial, and that motion overruled by the Court upon the ground that the verdict was right, because the evidence did not support the action.

In actions of ejectment, it is generally necessary for the plaintiff to show a right in his lessor to the possession of the premises, at the date of the demise, and at the time the action was commenced. The defendants in this case say, the lessors had no such right: that they only claim by a statute of *Virginia* which is private, and not proved, and therefore not to be noticed; or which, if public, does not give them such a title as would enable them to make the demise in the declaration supposed. Before we undertake to examine the lessors' title, we must see whether that title is not admitted by the defendants, from the nature of the contract under which they claim the possession. The only facts exhibited by the record,—and those were introduced by the defendants,—that were intended to show any claim in *Hughes*, who may be considered the only defendant here, beyond a tenancy for years, are the resolutions of the board in favour of *Clark*, and the act of the territorial legislature in favour of *Fetter, Fuller*, and *Hughes.* As to the territorial act, it can have no influence on the case. Passed many years after the contract to which it refers, it could not change the nature thereof, by enlarging or diminishing the legal effects of such contract; and the title of the premises not being in the territory, the legislature could not transfer the fee according to their pleasure. That some of the trustees, in their individual capacity, joined in a petition to procure the act, is a circumstance of no consequence. For any higher claim therefore than that of tenants to the plaintiff's lessors, the defendants must depend alone upon the resolutions of the board.

Whether the building of the mill, mentioned in the second resolution, was a performance of the condition annexed to the grant, might have presented a doubtful question, from the obscurity of the expressions used, had not the lessors themselves put that question to rest. By demanding and receiving from the then assignees of the premises under the contract, many years after the mill was in operation, and after the time limited for performance, the per cent. on the profits of the mill, the lessors of the plaintiff have shown their own understanding of the condition, and have admitted that it has been complied with.

The case then stands as if the resolutions were unconditional, and the next question is, what is their legal effect? The lessors say, that no interest whatever passed to the grantee, because they had no title themselves to justify their grant. To this position, the defendants very properly object. The trustees of *Clarksville* have here undertaken, by resolutions of their board, to grant an interest in these premises; and they are therefore prohibited, by the moral policy of the law, from contending that their title did not authorize the grant. Without therefore inquiring any further, we shall take it for granted that the trustees had a sufficient title to transfer such an estate, as these resolutions are by law competent to pass. Now what was the kind of estate conveyed? Was it a freehold of inheritance, or not of inheritance; a term for years, or an estate at will? Does the interest granted still continue, or has it expired by the act of the parties, or by the operation of law? These resolutions have no claim whatever to the character of a freehold conveyance, either according to the common law, or to the statute of uses. They are not deeds, nor matters of record of a Court of record. Indeed, such a character for them was not much insisted on by the defendants; but one of the counsel contends, that if they do not operate as an alienation of freehold title, yet they constitute a contract under which *Clark*, his heirs, and assigns, are entitled to the use and profits of the land, and which contract the trustees have no power to rescind. This will not do. Such a contract, vesting the use of land in the bargainee beyond a term of years, that is, for life or in fee, would be nothing more nor less than a freehold conveyance of the use, to which the statute of uses would transfer the possession. The resolutions cannot operate as such a conveyance by bargain and sale, or any other

54

May Term,
1826.

JACKSON
v.
HUGHES.

way, because, inter alia, they are not by deed; and therefore no such use is created by them, as the defendants contend for. The consequence is, that as no estate in fee or for life could pass by these resolutions, and as no time is fixed by them for the determination of the interest granted, there can be claimed no greater estate under them than a tenancy at will, or from year to year as long as both parties please. Their legal effect we conceive to be as follows: That upon the performance of the condition thereto annexed, within the ten years given for that purpose, the resolutions amounted to a lease for an indeterminate period of time, with a reservation of rent as a compensation for the privilege granted. It is impossible upon any principle of law, to say they can amount to more, and it would seem to violate the plain meaning of the parties, to say they intended any thing less. That being the case, the objections of the defendants to the trustees' title,—viz. that the statute of *Virginia* under which alone they claim is private, and not being proved is not to be noticed, or, that, if public, it gives them no such right of possession as would enable them to recover in the form they have adopted,—are objections which, under the circumstances of this case, the defendants are not permitted to make. The relation of landlord and tenant, created by the resolutions of the board, prevents the defendants from disputing the title of the trustees, which they have admitted to be good by entering into possession under the lease. N. Peake, 524.

The fact being established, that a tenancy was created between the parties to the contract, by the resolutions of the board of trustees; the next question is, was that tenancy still subsisting at the date of the demise in the declaration mentioned? This tenancy for an indeterminate period would no doubt, in Littleton's time, have been considered an estate at will, determinable upon the death or assignment of either of the parties; and if we are now to view it in that light, the defendants have nothing in the premises, for they entered into possession by virtue alone of an assignment, which of itself put an end to the tenancy they claim. Co. Litt. 57.—2 Bl. Com. 146. But tenancies at will were attended with so many inconveniences both to the landlord and tenant, that for a long time the current of decisions has been running very strongly against them, and in favour of considering demises for no stated period, as tenancies from year to year. It is said by J. *Wilmot*, in *Timmins* v. *Rowlinson*, 3 Burr. 1603, that

in the country, leases at will, in the strict legal notion of a lease at will, being found extremely inconvenient, exist only notionally. In *Right* v. *Darby*, 1 T. R. 159, *Buller* J. says, what was formerly a tenancy at will, is now construed to be a tenancy from year to year. In *Doe* v. *Porter*, 3 T. R. 13, it is said by Ld. *Kenyon*, that the tenancy from year to year succeeded to the old tenancy at will, which was attended with many inconveniences; and in order to obviate them, the Courts very early raised an implied contract for a year. In *Clayton* v. *Blakey*, 8 T. R. 3, there is the same doctrine. In *Doe*, on demise of *Warner*, v. *Browne*, 8 East, 165, there was a written lease by *Warner* to *Browne* of a messuage &c. at a certain rent, to continue as long as the rent was duly paid. Although there was no default of payment, *Warner*, after giving a regular notice to quit, brought an ejectment and recovered. The Court said, if this interest was not determinable so long as the terms were complied with, it would be an estate for life, which could not be created without deed; or if not for life, being for no assignable period, it must operate as a tenancy from year to year. These authorities prove, that estates from year to year have almost entirely superseded the old tenancies at will, and warrant us in construing the resolutions under consideration, as giving a license to occupy the premises, but for no certain time; and where a rent was reserved, as creating a tenancy from year to year. The estate then, held under these resolutions, was not put an end to by the assignment, but the same legal interest passed to the assignee, which the grantee originally possessed. *Botting* v. *Martin*, 1 Camp. 317. From what is shown by the record, the defendant, *Hughes*, must be considered the regular assignee of the premises, and nothing appears to have been done by him to put an end to his estate. If therefore this tenancy from year to year, which once existed, was at an end at the time the plaintiff contends he had a right to the possession, it must have been determined by some act of his lessors. This they could only do, by giving to the proper person half a year's notice to quit, at that period of the year when the tenancy commenced. The record does not inform us that any such notice was given, upon the present occasion, by the lessors of the plaintiff. The tenancy, then, must be considered as subsisting at the date of the demise in the declaration mentioned; and this action of ejectment, which treats the defendant as a trespasser, cannot be supported.

Hence it is the opinion of the Court, that the instruction in this case given to the jury, that the trustees of *Clarksville* could not make a demise which would support an action of ejectment, was correct: not because the statute of *Virginia* does not give them such a right of possession as would enable them to recover in this action of ejectment, for we have not looked into that; but because there was subsisting at the date of the demise, and at the time the action was brought, a tenancy from year to year, which it was incumbent on the board of trustees first to put an end to, by a regular notice to quit, before they could legally be supposed to have made the demise in the declaration contained.

*Per Curiam.*—The judgment is affirmed with costs.

*Howk* and *Nelson*, for the appellant.

*Dewey* and *Farnham*, for the appellees.