SCHMERTZ WIRE GLASS CO. et al. v. WESTERN GLASS CO.

(Circuit Court, N. D. Illinois, E. D.    June 30, 1909.)

Nos. 28,614, 28,615.

1. JUDGMENT (§ 510*)—COLLATERAL ATTACK—COLLUSION—UNITING OF ADVERSE INTERESTS—SUIT TO OBTAIN PATENT.

In the ordinary case collusion between the parties or a union of the contending interests will not only avoid the judgment taken thereafter on direct attack, but the continued prosecution of the suit after such union will be a contempt of court; but in a suit brought under Rev. St. § 4915 (U. S. Comp. St. 1901, p. 3392), to obtain the issuance of a patent, which is an administrative proceeding and may be either adversary or ex parte, the uniting of the adverse interests, when fully disclosed to the court, is not collusive, but merely converts the suit into an ex parte one, and does not affect the jurisdiction of the court, nor render its decree subject to collateral attack.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 953; Dec. Dig. § 510.*]

2. PATENTS (§ 229*)—"INFRINGEMENT"—PATENT FOR IMPROVED PROCESS.

When an entirely new process is invented and patented revolutionizing the art, the claims will be given a broad construction, and a different apparatus and a variant use of elements may amount to infringement; but a patent for an improved process stands on different grounds, and in order to constitute infringement it must appear that all the steps of the process are substantially used.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 365–369; Dec. Dig. § 229.*

For other definitions, see Words and Phrases, vol. 4, pp. 3590–3594.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. Patents (§ 328\*)—Suit for Infringement—Preliminary Injunction.
　　The Schmertz patents, No. 791,217 and reissue No. 12,443 (original No. 791,216), each for an apparatus and process for manufacturing wire glass, *held* valid and meritorious, but their infringement by defendant in such doubt as to require the denial of a motion for a preliminary injunction.
　　[Ed. Note.—Grounds for denial of preliminary injunctions in patent infringement suits, see note to Johnson v. Foos Mfg. Co., 72 C. C. A. 123.]

In Equity. Suits by the Schmertz Wire Glass Company and another against the Western Glass Company. On motions by defendant for attachment for contempt and for dismissal and motion by complainants for a preliminary injunction. All motions denied.

See, also, 178 Fed. 977.

A. J. Baldwin, William L. Pierce, Drury W. Cooper, and Reed & Rogers, for complainants.

Offield, Towle, Graves & Offield, for defendants.

SANBORN, District Judge. Three motions have been made in this case, one by defendant for a rule to show cause why attachment for contempt should not issue, and another to dismiss the suits, and a renewed motion by complainant for a preliminary injunction. On June 26, 1907, Judge Kohlsaat denied the first motion for injunction. Since then the complainants' patents have been sustained. Schmertz Wire Glass Co. v. Pittsburgh Plate Glass Co. (C. C.) 168 Fed. 73. In that case all of the questions arising in this except infringement were decided for complainants. Their two patents, No. 791,217 and reissue No. 12,443, were held not anticipated, and to disclose invention and merit of a high order; and both were held infringed.

The motions for attachment and dismissal are made upon the ground that the record shows, as it is alleged, that the two patents were procured by fraud and collusion in the proceeding brought to establish them, because there were no adversary interests; the expenses and attorney's fees all having been paid by complainants. Looking at the case in which the patents were directed to be issued (Appert v. Brownsville Plate Glass Co. [C. C.] 144 Fed. 115), it would not appear that the court was informed of the identity of interest; but from the later case it appears that the facts were fully disclosed to Judge Buffington, who decided both cases, who was fully and frankly informed that the defendant had acquired complainant's interest, so that no controversy remained. It does not expressly appear that Judge Buffington knew that the costs were paid by defendant; but this would follow from its acquiring the interest of Appert. Judge Buffington held that the proceeding to compel the issue of the patents was an adversary one when begun, and the jurisdiction was therefore clear, and that the subsequent union of the contending interests was immaterial because the proceeding is an administrative one, part of the applications for the patents, and may be either ex parte or litigious. The case being at first adversary in character, and the court having acquired complete jurisdiction, its decree was valid and binding, notwithstanding the suit

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

afterwards became an ex parte one; the facts having been fully disclosed.

In the ordinary case it is true, not only that collusion, or the mere union of the contending interests, will on direct attack avoid the judgment or decree, but a continued prosecution of the suit after such union will be a contempt of court. Lord v. Veazie, 8 How. 250, 12 L. Ed. 1067; Cleveland v. Chamberlain, 1 Black. 425, 17 L. Ed. 93; American Wood Paper Co. v. Heft, 8 Wall. 333, 19 L. Ed. 379; East Tennessee, etc., Co. v. Southern Tel. Co., 125 U. S. 695, 8 Sup. Ct. 1391, 31 L. Ed. 853; Western El. Co. v. Anthracite Tel. Co. (C. C.) 100 Fed. 301; International Tooth Crown Co. v. Kyle (C. C.) 113 Fed. 1022; Gardner v. Goodyear D. V. Co., 131 U. S. ciii, 21 L. Ed. 141, 3 O. G. 295; Doniphan v. Lehman (Dist. Ind., July 16, 1902) 179 Fed. 173. The above were all cases of direct attack. The same rule applies to fraudulent collusion. Huff v. Hutchinson, 14 How. 586, 14 L. Ed. 553; Hilton v. Guyot, 159 U. S. 113, 16 Sup. Ct. 139, 40 L. Ed. 95; Michaels v. Post, 21 Wall. 398, 22 L. Ed. 520. But when the only collusion is a union of the adverse interests, and the facts are fully disclosed to the court having full and complete jurisdiction, there is no fraud, and the judgment is binding on collateral attack, at least in an administrative proceeding for the issue of a patent. Schmertz Wire Glass Co. v. Pittsburgh Plate Glass Co., supra. The judge was not deceived or misled. A full disclosure of the situation was made. The proceeding was an administrative one, after the union of the diverse interests. The proceedings then became ex parte in their character, like the application in the Patent Office originally was. Butterworth v. United States, 112 U. S. 50, 5 Sup. Ct. 25, 28 L. Ed. 656; Whipple v. Miner (C. C.) 15 Fed. 117. The writ is not served on any private adverse party, but on the commissioner, and sometimes on the Secretary of the Interior, as was done in Gandy v. Marble, 122 U. S. 432, 7 Sup. Ct. 1290, 30 L. Ed. 1223; but the statute requires that adverse parties shall have notice, as they originally had in the case. Unless the commissioner actually appears to the suit, it must be brought in the District of Columbia, in one of its courts; that being his official residence. Butterworth v. Hill, 114 U. S. 128, 5 Sup. Ct. 796, 29 L. Ed. 119. It seems, therefore, that the motions for dismissal and attachment should be denied.

As to infringement the case presents some difficulty. The complainants' patents are fully described and illustrated by Judge Buffington in the Pittsburgh Plate Glass Case and the patents held valid and meritorious. With this conclusion I agree. But the important question here is whether the defendant, by adopting a new and distinct method of feeding the wire upon the lower layer of glass, under tension instead of by gravity, has not so varied the process as to escape infringement. A distinctive feature of complainants' process consists in allowing the wire netting to drop upon the glass by its own weight so as to avoid kinking, crawling, distortion of the wire, and resulting imperfection in the product. The theory of the gravity feed is that, if the wire is lightly fed upon the lower layer of glass by its own weight, it is then free to accept the forward movement of the hot glass and follow it, so that

it will be embedded with substantial regularity and precision. But if it is under tension, having a pull of its own caused by attachment at its front and rear ends, it cannot passively respond to the pull of the advancing body of glass which tenaciously grips and distorts it. Being softened by the heat of the glass, it is thus the more easily twisted, and in the Pittsburgh Plate Glass Case Judge Buffington expressly held that the infringing machines there considered fed the wire entirely by the gravity process. So the question here presented was not determined in that case.

Defendants' wire glass is made under the Jungers patent, No. 867,-510. The difficulties just described, causing distortion of the wire web, are designed by the Jungers process to be overcome by holding the web away from the advancing pour of hot glass until the very instant the latter meets the web, so that the wire does not oxidize or become incandescent until actually and firmly embedded between the two layers. As described in the specification:

"The web is at all times held out of actual contact with both bodies of glass, i. e., the first layer and the relatively advancing edge of the second pour, until these two bodies actually meet each other along the progressing line of juncture."

And all the claims provide for "simultaneously paying out under tension and accurately guiding into the relatively progressing line of juncture between the finished upper surface of the first layer and the advance meeting portion of the second layer, a fire-resisting reinforcement; said reinforcement being held free from contact with either body of glass until overflowed by the relatively,advancing edge of the second layer."

In the Patent Office the file wrapper shows that the only references cited as anticipations were those where it was thought that some tension was applied to the web. The Schmertz patents were not cited.

When an entirely new process is invented and patented, revolutionizing the art, the claims will be given a broad construction, as in the case of a foundation patent. A different apparatus, and a variant use of elements, may amount to infringement. Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279; Id., 125 U. S. 138, 8 Sup. Ct. 894, 31 L. Ed. 664; Mowry v. Whitney, 14 Wall. 620, 20 L. Ed. 860. But a patent for an improved process stands on different grounds. In such case it must appear, in order to constitute infringement, that all the steps of the process are substantially used. Royer v. Coupe, 146 U. S. 524, 13 Sup. Ct. 166, 36 L. Ed. 1073. The distinction is stated in Tilghman v. Proctor, to the effect that a patent may be granted for carrying into effect a principle; and if the patentee suggests and discovers not only the principle, but suggests and invents how it may be applied to a practical result by mechanical contrivances and apparatus, and shows that he is aware that no particular sort or modification of form of apparatus is essential to obtain benefit from the principle, then he may take his patent for the mode of carrying it into effect, and he is not under the necessity of confining himself to one form of apparatus. This rule was applied in Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136.

Applying these rules, it seems to me that the question of infringement is at least sufficiently doubtful to require a denial of the motion for a preliminary injunction.

As the gravity feed is so important a feature of the Schmertz patents, entirely eliminated by defendant's process, and as the difficulties of feeding the web under tension are claimed to be so thoroughly overcome by such process, the motion should be denied, and the more complete consideration of infringement postponed to final hearing.