# CHARLESTON.

## WHEELING BRIDGE & T. R'Y Co. v. PAULL, JUDGE.

### Submitted February 1, 1894.—Decided March 24, 1894.

1. CIRCUIT COURT—BOARD OF PUBLIC WORKS—JURISDICTION— APPEAL.

Section 67, c. 29, of the Code, in so far as it allows an appeal from the decision of the Board of Public Works to the Circuit Court, is constitutional and valid.

2. MANDAMUS.

Mandamus is the proper remedy to compel the exercise of jurisdiction by the Circuit Court, which it is erroneously refusing to assume contrary to the express provisions of a constitutional and valid statute.

W. P. HUBBARD, for petitioner cited Code, c. 29, s. 67; 15 Md. 376; Const. Art. VI., s. 24, 25; Id. Art. VII., s. 3, 14; Id. Art. IV., s. 9; Id. Art. VIII., s. 24; Id. Art. XIII., s. 4; 3 Metc. (Ky.) 213; 40 Cal. 340, 346; 58 Hun. 412; 21 L. R. A. 529; Federalist Nos. 46-50, 65, 74, 75; Code, c. 47; Id. c. 122, s. 1; Id. c. 66, s. 4; Id. c. 83; Id. c. 57, s. 9; Id. c. 73, ss. 3, 4; 26 W. Va. 829; 24 W. Va. 561; Code (1860) c. 168, s. 1; 62 Mich. 408, 413; 143 U. S. 683, 691; 28 W. Va. 264; 20 W. Va. 157; 30 W. Va. 480; 36 W. Va. 341; 18 S. E. Rep. 632.

ATTORNEY-GENERAL T. S. RILEY for respondent cited 34 W. Va. 285; 102 U. S. 186; 19 How. s. p. 15; 28 Cal. 639; High Ex. Rem. (2d Ed.) § 252; 19 Wis. 531; 36 W. Va. 341; 18 S. E. Rep. 632; 8 W. Va. 711; Const. Art. VIII.,

s. 12; 30 W. Va. 481; 24 W. Va. 362, 379 ; 28 W. Va. 271 ; 32 W. Va. 393, 404, 405 ; 6 Kan. 500 ; 24 W. Va. 517 ; 25 W. Va. 521 ; Win. Adj. Words, *etc.*, 38, 613.

DENT, JUDGE :

In the matter of the application of the Wheeling Bridge & Terminal Railway Company for a *mandamus* to the Circuit Court of Ohio county, to require it to entertain an appeal from an assessment made by the Board of Public Works, the following is a statement of the case adopted from the brief filed by W. P. Hubbard, Esq., attorney for petitioner :

"The property of the Wheeling Bridge & Terminal Railway Company was assessed by the Board of Public Works at four hundred thousand dollars for the year 1893. Deeming itself aggrieved by such assessment the railway company sought to appeal from the action of the board to the Circuit Court for Ohio county, under the provisions of section 67 of chapter 29 of the Code. An appeal was allowed. The Board of Public Works moved to dismiss the appeal on the ground that the Circuit Court was without jurisdiction to entertain it. The court holding that the statutory provisions above mentioned are unconstitutional dismissed the appeal. The railway company now asks a *mandamus* to require the Circuit Court to entertain and decide the appeal, and thus presents to this Court the question of the constitutionality of the statutory provision permitting such appeal."

The Attorney-General, appearing for the state and the Circuit Court insists (1) that section 67, c. 29, of the Code, in so far as it grants an appeal to the Circuit Court, is unconstitutional; the *mandamus* is not the proper remedy to review the action of the Circuit Court in refusing to take jurisdiction of the appeal, as there is plain, adequate, legal remedy afforded by writ of error.

The first question for the consideration of this Court is, does the constitution prohibit the legislature from imposing on the circuit courts the duty of taking jurisdiction, and hearing appeals, in the matter of ascertaining the true value of property under the law for the purpose of taxa-

tion?  If it is a question of doubt, it must be resolved in favor of the legislative right, and against the Court's exclusiveness, as is said by Judge BRANNON in the case of *Mackin* v. *County Court*, 38 W. Va., 338 (18 S. E. Rep. 632.) "Courts can not too often repeat what has been so often stated that it seems threadbare—that all courts, while they must defend the constitution, and the rights of the people under it, even against the legislature, yet in so doing they must move with the most solemn caution, resolve all doubts in favor of the act, and never except where the act is very plainly and palpably, and beyond doubt, violative of the constitution, overthrow an act of the legislature;" citing *Bridges* v. *Shallcross*, 6 W. Va. 568; *Com.* v. *Moore*, 25 Gratt. 954; *Slack* v. *Jacob*, 8 W. Va. 612.  While this is true in all cases, it has greater force, if possible, where the legislature, as in the present instance, instead of depriving persons of their rights, privileges and property, is seeking to extend and preserve them.

The Circuit Court, to support its refusal to take jurisdiction of this controversy, relies on article V of the constitution, which is in these words:  "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature."

If this article stood alone, unmodified by other provisions of the constitution, and the ascertainment of values for taxation purposes was inherently legislative, we could not for a moment hesitate in saying that the Circuit Court's position was impregnable; but the constitution, within itself, after the declaration of this general doctrine, proceeds to make many laps of the various departments, so as to make them mutually dependent upon and supporting each other; thus welding them into an harmonious whole, or three distinct departments in one, for the preservation, at the smallest expense possible, of the largest freedom of individual rights consistent with the general welfare.

Were it practicable to keep these three departments

wholly distinct, the increase of the necessary offices and officers would be so great, and the expense thereof so burdensome, as to render the cost of the administration of the government unbearable, especially to the citizen tax-payer who must contribute and yet not share in the distribution of the taxes. So that, while we find that the constitution, as much as possible keeps the heads of the three departments comparatively distinct and independent of each other, yet as we move down the scale these several powers become more complicated and interwoven with each other, until we find the common council of every village exercising legislative, executive and judicial functions, indiscriminately, by authority of the same constitution which declares that these functions shall be kept distinct.

The jurisdiction of the Supreme Court of Appeals is limited by the constitution to matters formerly considered judicial and also to many matters which formerly belonged to the legislative department of the government; and there is no general clause permitting the legislature to add to or take from this jurisdiction, except in civil and criminal cases. But this can only be done by amendment of the constitution. The makers of the constitution in framing the section defining the jurisdiction of the Circuit Court being cognizant—in the language JUDGE BRANNON in the case of *Mackin* v. *County Court*, above referred to—of "the presence of this very important court among the people in every county; its readiness, facility, and competency in the hearing of trials of matters by witnesses, juries, and otherwise; the obvious necessity of a power in the legislature to render available and useful its functions in the administration of government, by charging it with jurisdiction of additional matters as time and expediency may suggest," after bestowing all judicial power, as then recognized, added the general provision that "they shall also have such other jurisdiction whether supervisory, original, appellate or concurrent as is or may be prescribed by law," hereby conferring on the legislature the right to impose on this court such further jurisdiction, not strictly legislative, but strictly administrative and judicial, which the necessities, and the impar-

tial, just, and economical administration, of the government might from time to time require.

The question then is: Is the valuation of property for purposes of taxation strictly a legislative power? Section 1, Art. X, of the constitution, provides that "all property both real and personal shall be taxed in proportion to its value to be ascertained as directed by law." Before the adoption of this provision into our constitution, the legislature was conceded the right to ascertain the value of properties, correlative, or as a necessary adjunct, to its power to levy taxes, as the one function could not be exercised without the other. By this provision its right to fix values is gone, and it is limited to the direction by law as to how values are to be ascertained. Having discharged this duty by its enactments, it has nothing further to do with the matter. So the ascertainment of values for the purposes of taxation, in the development of our government, has ceased to be strictly, a legislative power.

The inconsiderate language used by some of our judges in their opinions is quite misleading on this subject, as they have failed to note the effect of the change in the constitution. Is the ascertainment of the values of property for taxation or other purpose inherently or by nature legislative, executive or judicial?

In Welty's Treatise on the Law of Assessments (section 25, p. 37) the law is laid down as follows: "In the exercise of the functions, and in the discharge of the duties, of his office, an assessor acts both judicially and ministerially; that is, some of his acts are judicial, and some ministerial. When it becomes necessary to determine a question of law or fact, the act is judicial. It may safely be affirmed that in no instance does an assessor perform all the acts necessary to perfect the assessment of a single person or item of property without the exercise of acts eminently judicial in their nature. He is clothed with power to administer oaths, to receive both written and oral statements touching the matters his office gives him duty to inquire about, and to determine the facts necessarily entering into an assessment, such as the liability of persons to assessment and taxation in his district; the property owned by them, and

the portion thereof subject to taxation ; the portion thereof, if any, exempt from taxation, and the value thereof. These acts are spoken of in all the cases as judicial. * * * When the assessor has jurisdiction over the person and property, he is not responsible for any errors or mistakes he may make while acting within the scope of his jurisdiction. Persons feeling aggrieved must seek their remedy in an appeal to the board of equalization, or as may have been provided for by statute."

The ascertainment of the values of property is strictly judicial, and, in a government perfectly separated into the three distinct departments, of legislative, executive, and judicial, would, of necessity, belong to the judicial, and not to either of the other departments, because it has not in it a single element relating to the enactment or execution of law. It has, however, heretofore been considered the necessary adjunct of the strictly legislative power—made so by the constitution—of levying taxes. The constitutional provision referred to, and the law under consideration, are but further developments towards a more complete separation of the departments of the government, as provided in article V of the constitution, in response to the necessity for a more satisfactory, impartial, and judicial method of ascertaining the values of properties for the purposes of taxation, that the levies may be justly apportioned among the tax-payers, and the burdens of the government rendered equal and uniform. It being the duty of the legislature to direct by law how the true values of properties should be ascertained (an investigation strictly judicial in its nature) and the legislature having to provide tribunals to discharge this important function in a just and impartial manner, and having provided for the original valuation by a proper assessment tribunal, what better could be done than to allow the action of these tribunals, at the instance of any one personally aggrieved, to be reviewed by the Circuit Court—a judicial body already in existence, and fully equipped to perform all necessary judicial functions.

There can be but one conclusion in this case, and that is that it is not a question of doubt, but the law is in perfect

accord with both the language and spirit of the constitution, and that the Circuit Court was plainly wrong in holding otherwise, and refusing to take jurisdiction of the petitioner's appeal.

Such being the conclusion, is *mandamus* the proper remedy to compel the Circuit Court to hear and determine this appeal on its merits ? In Merrill on Mandamus (page 252, § 203) the law is thus stated: "When a court refuses to proceed and try a cause, erroneously deciding that it has no jurisdiction, it will be compelled by the writ of *mandamus* to assume jurisdiction, and proceed with the cause." And in *Ex parte Parker*, 120 U. S. 738 (7 Supt. Ct. 767). "The writ of *mandamus* properly lies in cases where the inferior court refuses to take jurisdiction where by law it ought so to do, or where, having obtained jurisdiction in a cause, it refuses to proceed in due exercise thereof." See, also, *Cowan* v. *Fulton*, 23 Gratt. 579 ; *Ex parte Schollenberger*, 96 U. S. 369; *White* v. *Holt*, 20 W. Va. 815. The constitutionality of a law being involved, would a writ of error afford an adequate or legal remedy ?

The appeal was not tried on its merits, but was dismissed for want of jurisdiction. The jurisdiction being unquestionable, the order of dismissal amounts to nothing more than a refusal to hear or entertain the appeal, and is equivalent to the refusal of the court to proceed with any case properly pending therein. Circuit courts can not, under the pretext of want of jurisdiction, put litigants to the expense and delay of invoking the appellate powers of this Court, but a summary *mandamus* is the only adequate remedy in such cases. *Mandamus* is therefore awarded as prayed.