THE STATE OF FLORIDA *ex rel.* HELEN S. BURBRIDGE,
    BY CHARLES D. HAGAN AS HER GUARDIAN AND
    NEXT FRIEND, AND CHARLES D. HAGAN AS NEXT
    FRIEND OF SAID HELEN S. BURBRIDGE, RELATORS,
    VS. RHYDON M. CALL, JUDGE OF THE FOURTH JU-
    DICIAL CIRCUIT OF FLORIDA, RESPONDENT.

1. Mandamus can only be resorted to where there is no other
   adequate remedy to accomplish the purpose sought thereby,
   and where a remedy by appeal or writ of error exists, and
   such remedy is competent to afford full and ample relief, man-
   damus will not lie.

2. An appeal lies to this court from an interlocutory decree in a
   chancery cause whereby an order of publication and the pub-
   lication thereon, and the service upon a non-resident defend-
   ant administratrix sought thereby are set aside and held for
   naught upon her motion, and the record of the entry of ap-
   peal from that decree under Chapter 4528, act of 1897, will give
   this court jurisdiction over the person of such non-resident
   administratrix for the purpose of passing upon the propriety
   of such decree.

3. Briefs should be couched in decorous language and respectful
   in terms to the judge, the attorneys and all other persons
   mentioned therein, and where there is nothing in the record
   to justify remarks of a personal nature, such remarks should
   not be inserted in briefs prepared for this court.

This is a case of original jurisdiction.

The facts in the case are stated in the opinion of the
court.

*Jas. F. Glen*, for Relators.

*R. M. Call*, in *pro per*.

CARTER, J.:

This is a proceeding of original jurisdiction by man-
damus on behalf of relators against respondent.  The
alternative writ alleges that on October 27, 1898, re-
lators filed in the Circuit Court of Duval county their
bill in chancery against Matilda F. Burbridge as admin-
istratrix of the estate of John Q. Burbridge, deceased,
and against one George V. Burbridge, wherein they
prayed that an accounting be had of certain amounts
collected by said John Q. Burbridge, deceased, in his
life-time as guardian of said Helen S. Burbridge from
certain lands and tenements in the State of Illinois, the
title to which became vested in Helen S. Burbridge on
the death of her mother; that it was alleged in said bill
that at the time of filing same Helen S. Burbridge was
an infant under twenty-one years of age; that said bill
further prayed that relators recover from said Matilda
F. Burbridge as administratrix of the estate of said John
Q. Burbridge, deceased, the amount found to be due
upon such accounting; that it was also alleged in said
bill that said Matilda F. Burbridge was appointed ad-
ministratrix of the estate of said John Q. Burbridge, de-
ceased, by the County Judge of Duval county, Florida,
and duly qualified as such, and was at the time of filing
the same administratrix of said estate; that subpoena
duly issued to each defendant named in the bill in ac-
cordance with a prayer to that effect; that as to service
upon the defendant administratrix the sheriff made his
return upon said subpoena to the effect that he deliv-
ered a true copy thereof to Farber Burbridge for said
defendant, at the same time exhibiting the original, said
Farber Burbridge being a son of said defendant, but
declined to state in said reutrn that said Farber Bur-

bridge was a legally recognized and publicly known agent of said defendant administratrix, and that said defendant resided or had removed beyond the limits of the State of Florida; that said defendant administratrix did not enter any appearance in response to the service of subpoena upon her son; that thereupon, on March 24, 1899, relators filed the affidavit of their attorney to the effect that he was attorney and agent for complainants in said cause; that in the belief of said affiant the said Matilda F. Burbridge was a resident of a State other than the State of Florida, to-wit: of the State of New York; and resided somewhere in the city of New York, in said State of New York; that affiant did not know more particularly the residence of said Matilda F. Burbridge; that said defendant had been absent from the State of Florida for more than sixty days next preceding the said affidavit and was then absent from said State, and there was no person in said State the service of a subpoena upon whom would bind said defendant; that in affiant's belief said defendant was over twenty-one years of age, and that said defendant was a resident of the United States; that on the same day the clerk of said court made an order for service on said defendant by publication which, after reciting the substantial allegations of said affidavit, required said defendant to appear to the bill filed on May 1st, 1899, before the Circuit Court of Duval county at the court house in the city of Jacksonville, and directed that said order be published in the "Metropolis" once a week for four consecutive weeks prior to said day, and that a copy of said order be posted in front of the court house door of said county within twenty days from the date of the order; that on the rule day in June, 1899, relators procured to be made

State v. Helen S. Burbridge.—Opinion of Court.

and filed a certificate of the clerk showing service by publication, to the effect that a copy of said order was posted in front of the court house door within twenty days after the date thereof, to-wit: on March 24, 1899; that publication of said order was duly made in the Metropolis, a newspaper published in said county, once a week for four consecutive weeks beginning on March 31st, 1899, and ending on April 28, 1899; that on March 24, 1899, said clerk mailed a copy of said order of publication to the said defendant, by placing same in a sealed envelope addressed to said defendant in the city of New York, State of New York, with sufficient postage thereon, and depositing said envelope so addressed and containing said notice in the postoffice at Jacksonville; that on June 6, 1899, the respondent entered a decree *pro confesso* against said defendant, reciting that due and legal service by publication was had upon the said defendant requiring her to appear to the bill filed on the rule day in May, 1899, and that she failed to plead, answer or demur to the bill by the rule day in June; that on said last mentioned rule day relators applied to the clerk for the entry of a decree *pro confesso*, and that the clerk failed to enter it; that prior to the entry of the decree *pro confesso* said defendant filed a certain motion in said cause, by the terms of which said defendant undertook to confine her appearance solely to the purpose of making said motion, and moved the court to set aside, discharge and hold for naught the order of publication and the publication had thereon, upon the following grounds: 1st. That the clerk had no authority to make or file the order or to make the publication. 2nd. That the allegations and prayer of the bill show that said defendant is sought to be impleaded as administratrix as a non-resident of Florida, and

against whom a money decree and none other is sought. 3rd. That the affidavit is not a sufficient predicate upon which the clerk is authorized to make the order of publication. 4th. That the subject-matter of the suit, in respect of which a personal decree is sought against defendant attempted to be impleaded as a non-resident of Florida and a resident of New York, is the alleged receipt of rents by defendant's intestate arising out of real property situate in the State of Illinois. 5th. Said process of publication was not instituted, issued, conducted or concluded as to either or all of the steps therein as required by law for substituted process. That thereafter, on June 9, 1899, said motion was brought on for hearing by said defendant administratrix before respondent and was argued by counsel for relators and said defendant and submitted to respondent for determination, and thereafter, on June 12, 1899, respondent made an order which, after reciting that the cause was brought on for hearing on the motion filed by the defendant administratrix appearing specially and confining her appearance to the purpose of making said motion, adjudged and decreed that the decree *pro confesso* be set aside, relators consenting thereto; and further, that the said motion be granted and that the order of publication and the publication had thereon and the service sought thereby be and the same was thereby set aside and held for naught; that at the hearing of said motion relators consented that the decree *pro confesso* be set aside, same having been taken under a misapprehension in regard to an agreement between counsel as to the time when the motion should be brought on for hearing; that respondent granted said motion on the sole ground that in his opinion a person decree was sought against the defendant administratrix, and juris-.

diction could not be obtained to render such decree upon service by publication; that respondent so stated to relators' counsel, but refused to so state in his order that the decree sought in said proceeding was not a personal decree against said defendant administratrix but was solely a decree against her in her representative capacity, to be satisfied out of assets of the estate of her intestate situated in the State of Florida; that under the laws of New York, as well as under the laws of Florida, said defendant could not have been sued in the State of New York upon such claim, and she could not have been sued thereon except in the State of Florida; that the motion of said administratrix was, as relators were advised and believed, in legal effect an appeal to a court of equity to assist her in violating her trust and thereby commit a fraud upon relators, and that it was the duty of a court of equity to consider such motion as a general appearance giving to it jurisdiction over the person of said defendant, even if the service by publication was not legally sufficient to give the court jurisdiction in the premises; that said motion was in legal effect a general appearance on the part of said defendant administratrix, and that relators were without any complete and adequate remedy in the premises. The alternative writ commands respondent to set aside and annul the order dated June 12, 1899, in so far as it undertakes to set aside the order for publication made in said cause and the service had upon said defendant administratrix in pursuance of said order, or show cause why he has not done so before the Supreme Court on September 12, 1899. Respondent moves to quash the alternative writ upon various grounds, and other pleadings are filed by the respective parties which, in view of the conclusion

reached upon the motion to quash, need not be set out in detail.

In disposing of the case upon the motion to quash, we consider it unnecessary to pass upon any ground of the motion other than that under which it is argued; that relators have an adequate remedy by appeal for the relief sought in this proceeding. The proceeding by mandamus can only be resorted to where there is no other adequate remedy to accomplish the purpose sought thereby. State *ex rel.* Proseus v. Craft, 17 Fla. 722; State *ex rel.* Bradley v. Cone, 40 Fla. 409, 25 South. Rep. 279. And where a remedy by appeal or writ of error exists, and such remedy is competent to afford full and ample relief, mandamus will not lie. High's Ex. Legal Rem., sec. 177; Short on Inf. Mand. & Prohibition, 232 *et seq.*; Merrill on Mandamus, sec. 53; 13 Ency. PL. & Pr. 530. It is said in High's Ex. Legal Rem., *supra*: "The interference in such cases would, if tolerated, speedily absorb the entire time of appellate tribunals in revising and superintending the proceedings of interior courts, and the embarrassments and delays of litigation would soon become insupportable, were the jurisdiction by mandamus sustained in cases properly falling within the appellate powers of the higher courts." Other reasons equally as potent support the rule. Where the judge makes a ruling upon a question presented by proper pleadings in a pending cause, from which an appeal lies, it is manifestly more appropriate to pursue the remedy by appeal where the party benefitted by the ruling will be legally entitled to be heard in support thereof, than to adjudicate the question in a proceeding to which he is not a party. And to implead the judge personally in proceedings to annul decisions made by him in the line of his official duty, thereby subjecting

him to the inconvenience, expense and annoyance of defending suits instituted against him in other courts in which he has no personal interest, and which, if the principle were relaxed, might in many instances require him to devote to personal litigation of this character much of the time demanded by his official duties, is an evil not to be encouraged where the law has provided other adequate remedies to test the correctness of such rulings, without subjecting the judge and the public to the inconveniences suggested. It must not be forgotten that mandamus is an extraordinary remedy, not intended as a substitute for other remedies, but rather to afford relief in cases where other remedies do not exist or are inadequate, and even in such cases it does not always lie.   In the case before us it is shown that respondent, in a chancery cause pending before him, upon a motion duly presented and argued by the parties interested, made an interlocutory decree whereby an order of publication and the publication had thereon and the service upon a non-resident defendant administratrix sought thereby were set aside and held for naught. There is no allegation that respondent has declined to pass upon any question presented to him in the cause, but the complaint is that he decided the motion erroneously, and the application to this court is to compel him to undo his alleged erroneous decision by setting aside and annuling the interlocutory decree referred to.   The relators contend that this decree is nothing more nor less than a decision that the court has not jurisdiction over the defendant administratrix and a refusal to proceed further in the cause.   If we should admit this to be correct, it does not follow that an appeal from this order would not accomplish the same purpose as is sought by this writ, and in a manner that will entitle the

defendant administratrix to be heard and relieve the judge from the burden of defending personal litigation respecting his official decisions. Although relators deny that an appeal lies from interlocutory decrees of this nature, we have no doubt that this broad language from Section 1457, Revised Statutes: "Appeals may be taken and prosecuted from any interlocutory order, decision, judgment or decree of the Circuit Courts of this State when sitting as courts of equity," is amply sufficient to secure the right of appeal from such decrees, and there is nothing in the preamble to Section 3, Chap. 521, approved January 7, 1853, from which this section of the Revised Statutes was compiled which would authorize us to exclude this class of interlocutory decrees from the right of appeal there given. The order made by respondent comes strictly within the definition of an "interlocutory" order, decision, judgment or decree, from which the appeal is authorized. Bouvier's Law Dic., TITLE, *Interlocutory*.

Relators insist, however, that if the decision of respondent was correct, then the Circuit Court of Duval county had never acquired jurisdiction over the defendant administratrix, and that the record of relators' entry of appeal from that decision under Chap. 4528, act of 1897, could not give the appellate court jurisdiction over the person of a defendant over whom the Circuit Court had never acquired jurisdiction. But the defendant administratrix by her motion in the Circuit Court submitted herself to the jurisdiction of that court for a special purpose, and the record of an entry of appeal from the decision rendered in her favor upon her motion will give the appellate court jurisdiction over her person for the purpose of passing upon the propriety of that decision, even though she fails to appear in this court. Of this

there can be no doubt. State *ex rel.* Andreu v. Canfield, 40 Fla. 36, 23 South. Rep. 591. The order complained of being subject to appeal, that remedy is competent to afford full and ample relief to the relators, by securing a reversal of the decree, if erroneous.

It only remains to notice several cases referred to in the brief of counsel for relators which, it is contended, are opposed to the views herein announced. In *Ex parte* Henderson, 6 Fla. 279, mandamus was held to be the proper remedy to compel a Circuit Court to hear and adjudicate an appeal from a justice's court, but in the report of that case it does not appear that the Circuit Court had made any order in the cause that could be appealed from. In the next case Anderson v. Brown, 6 Fla. 299, it distinctly appears that no appeal lay from the order of a Circuit Court dismissing an appeal from a justice's court for want of jurisdiction, and in that case it was again held that mandamus would lie to compel the Circuit Court to entertain jurisdiction. In State *ex rel.* Colcord v. Young, 31 Fla. 594, 12 South. Rep. 673, the Judge of the Circuit court, upon an appeal from the judgment of a County Judge refusing to admit to probate a certain instrument purporting to be a last will and testament, made an order declining to proceed with the hearing of the appeal on the ground that he was disqualified. No appeal lay from this order, and the court very properly held that an appeal from the *judgment on the merits* would not be a sufficient or adequate remedy so as to preclude mandamus. The same conclusion was reached by the Supreme Court of Alabama in *Ex parte* State Bar Association, 92 Ala. 113, 8 South. Rep. 768. In State *ex rel.* Sanchez v. Call, 36 Fla. 305, 18 South. Rep. 771, mandamus was awarded to compel the entry of a proper judgment in accordance with a

mandate from this court, which the Circuit Judge had refused to enter by denying a motion for such judgment. No appeal or writ of error lay from the order denying said motion, and it is manifest that in such a case an appeal or writ of error from the judgment to be finally entered would not afford an adequate remedy. Gaines v. Rugg, 148 U. S. 228, 13 Sup. Ct. Rep. 611. In State *ex rel.* Turner v. Hocker, 36 Fla. 358, 18 South. Rep. 767, a writ of mandamus was awarded against the Judge of the Fifth Judicial Circuit, commanding him to entertain, hear and determine a certain equity cause pending in the Circuit Court of Citrus county, the judge having declined to hear the cause on the ground that he, as Judge of the Fifth Circuit, had no jurisdiction over causes pending in Citrus county, and upon demurrer to the alternative writ he insisted that Chap. 4227, act of 1893, which extended the limits of the Fifth Judicial Circuit so as to embrace Citrus county, was unconstitutional. It does not appear from the report of that case that the judge had made any order in the case that could be reviewed on appeal. In State *ex rel.* Hart v. Call, decided at the present term of this court, the point was not suggested to and was designedly not passed upon by the court, whether relator had an adequate remedy by appeal, and the peremptory mandamus was refused on another ground. There is nothing in our decisions,therefore, which expressly or by necessary implication holds that mandamus will be awarded to compel a court to entertain jurisdiction in cases where the court decides that it has not such jurisdiction, and such decision is embodied in an order or judgment from which an appeal lies. It may be that no appeal will lie, or if so that the remedy by appeal is inadequate in the classes of cases illustrated by State *ex rel.* Colcord v. Young, State *ex rel.* Hart v.

State v. Helen S. Burbridge.—Opinion of Court.

Call, and State *ex rel.* Turner v. Hocker, even though
the refusal to act be put into the shape of an order of
the court; but where, as in this case, the court does not
decline to entertain jurisdiction, but, on the contrary,
does hear and decide questions arising in the case pre-
sented by the pleadings, even though the effect of such
decision is to hold that jurisdiction over the person of a
defendant has not been acquired, appeal from such or-
der if allowed does furnish an adequate remedy, pre-
cluding mandamus. *Ex parte* Railway Co., 103 U. S.
794; *Ex parte* Baltimore & Ohio R. R. Co., 108 U. S.
566 ,2 Sup. Ct. Rep. 876. In reaching our conclusions
upon this question we have not overlooked the decisions
in Wheeling Bridge & T. R'y. Co. v. Paull, 39 W. Va.
142, 19 S. E. Rep. 551, and State *ex rel.* Smith v. Mc-
Clinton, 17 Wash. 45, 48 Pac. Rep. 740, but we regard
them as unsound and as clear departures from the
weight of authority, as well as elementary principles.

In disposing of this case we deem it proper to say
that there are expressions in the briefs filed by the re-
spective parties that have no proper place in the argu-
ment of the questions presented for our decision. Briefs
should be couched in decorous language and respectful
in terms to the judge who tried the cause, the attorneys
and all other persons mentioned therein. Scroggin v.
Brown, 14 Ill. App. 338. In Flannagan v. Elton, 34
Neb. 355, 51 N. W. Rep. 967, the court say: "In the
briefs of the attorneys for both parties there is consid-
erable matter of a personal nature. Where the charac-
ter of the parties or the attorneys is not involved in the
case, all references and comments of a personal nature
by a party in his briefs are entirely out of place and are
in the nature of an admission that there is not sufficient
merit in his side of the controversy to warrant him in

relying thereon, and hence that it is necessary to direct attention to the faults or failings of the adverse party or his attorney. It is not complimentary to a court to suppose that such statements would divert its attention from the points at issue or be given the slightest weight, and they should be omitted." The reference to the "elastic conscience" or relators' attorney in the brief filed by respondent, and to the "ingenious skill of an artful dodger" in the preparation of respondent's return in relators' brief, as well as other expressions, in the briefs, are wholly out of place and uncalled for by anything in this case. Nor does the statement in relators' brief, that nothing therein is intended to be construed as reflecting in any way upon respondent, relieve the improper remarks of their objectionable character. The remarks are admittedly intended for some attorney who it is assumed prepared respondent's return, but the return and brief for respondent are both filed in his name, and no attorney appears for him in this court. If it is improper to use disrespectful language to the party or his attorney, it is equally as reprehensible to use such language with regard to some other unnamed person or attorney not connected with the case, where, as in this case, there is nothing involved which makes such remarks applicable. It is our duty to see that the files of this court do not become the permanent receptacles of such objectionable matter, and we shall in future cases, if these improprieties are repeated, apply the more drastic remedy of striking such briefs from the files. Green v. Elbert, 137 U. S. 615, 11 Sup. Ct. Rep. 188.

The motion to quash is sustained, relators to pay the costs of this proceeding.