**BALTIMORE & O. R. CO. v. BOARD OF PUBLIC WORKS OF WEST VIRGINIA et al.**

District Court, N. D. West Virginia.
Dec. 2, 1936.

John J. Cornwell, of Baltimore, Md., and J. O. Henson, of Martinsburg, W. Va. (John J. Cornwell, of Baltimore, Md., and J. O. Henson and Stephen Ailes, both of Martinsburg, W. Va., on the brief), for complainant.

Homer A. Holt, Atty. Gen., of West Virginia, and J. F. Bouchelle, Asst. Atty. Gen., of West Virginia, for defendants.

Before PARKER and SOPER, Circuit Judges, and BAKER, District Judge.

PARKER, Circuit Judge.

This is a suit by the Baltimore & Ohio Railroad Company against the Board of Public Works of West Virginia, the Secretary of State, Auditor, Treasurer, Tax Commissioner and Attorney General of that state and the sheriffs of the various counties in which the railroad company has property. The purpose of the suit is to enjoin the assessment or collection of taxes on a valuation of plaintiff's property alleged to be excessive and discriminatory; to enjoin the institution of suit or other proceeding for the collection of the state privilege tax, alleged to be unconstitutional; and to have the privilege tax declared unconstitutional and invalid as a means\of removing the cloud which it is alleged to cast upon the title of plaintiff's property. As interlocutory injunction is asked, a court of three judges has been constituted pursuant to section 266 of the Judicial Code, as amended (28 U.S.C.A. § 380).

The bill of complaint as amended alleges that plaintiff's property in the state of West Virginia has been assessed for taxation by the Board of Public Works at $85,000,000; that this valuation is in excess of the true and actual value of the property; that it is discriminatory when compared with the valuation of other railroad property within the state and other real and personal property within the state; and that the assessment and collection of taxes on the basis of such assessment would deprive plaintiff of property without due process of law and deny it the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States. The amended bill avers also that the privilege tax imposed by the statutes of West Virginia of $^{65}/_{100}$ per cent. of plaintiff's property valuation and 4 per cent. of its net income is a mere subterfuge for the imposition of an additional discriminatory property tax, and that it is void both because it is confiscatory in violation of the Fourteenth Amendment and because it constitutes a burden on interstate commerce. It is averred that this privilege tax, which is declared a lien upon plaintiff's property by the statute, constitutes a cloud upon its title which the court should remove.

Motions have been made to quash the service of the subpœnas and dismiss the bill on the ground that the sheriffs are not necessary or proper parties to the suit and that none of the other defendants is a resident of the Northern District of West Virginia.

Other motions to dismiss raise the question of plaintiff's right to come into equity in view of the fact that it has failed to exhaust its administrative remedies with respect to the valuation of its property, and that it has an adequate remedy at law with respect to the other matters of which it complains. Five questions are presented for our consideration by the motion to dismiss: (1) Whether the sheriffs who have been made defendants are necessary or proper parties to the suit (if they are, the venue must be sustained, as a number of the sheriffs reside within the district); (2) if not, whether the venue can be sustained on the ground that certain of the other defendants were residents of the Northern District when elected to office and still vote in that district, although living with their families at the capitol of the state in the Southern District; (3) whether plaintiff has exhausted its administrative remedies with respect to the assessment of its property; (4) whether plaintiff stands in danger of irreparable injury or is without a remedy at law with respect to the enforcement against it of the privilege tax; and (5) whether the court has jurisdiction to declare the privilege tax invalid in order that it may remove the alleged cloud from the title of plaintiff's property. We think that all of these questions must be answered in the negative.

■ As to the first question, it is clear from the statute that, if injunction is granted against the State Auditor as prayed, the sheriffs can do nothing which would affect the plaintiff. Only in the event that the plaintiff fails to pay its property tax into the state treasury by May 1st of the following year, are the sheriffs charged with any duties with respect to the taxes and then only on the certification by the State Auditor. Code of W.Va. c. 11, art. 6, § 18, as amended by Acts 1933, c. 39; Norfolk & W. Ry. Co. v. Board of Public Works (D. C.) 3 F.Supp. 791. If the Auditor is enjoined from making the certificate, there is no reason to apprehend injury from action on their part and no occasion for making them parties to the suit. Under such circumstances, the sheriffs joined as defendants are to be treated as mere nominal parties, and the question of jurisdiction is not affected by their presence. See Stewart v. B. & O. R. Co., 168 U.S. 445, 449, 18 S.Ct. 105, 42 L.Ed. 537; Jackson v. Jackson (C.C.A.4th) 175 F. 710, 716; Holbrook Irri. Dist. v. Arkansas Valley, etc., Land Co. (C.C.A.10th) 54 F.(2d) 840; Sioux City & D. M. Ry. Co. v. Chicago, M. & St. P. Ry. Co. (C.C.) 27 F. 770.

So far as the privilege tax is concerned, the sheriffs are not charged with any duties whatever with respect thereto. In case it is not paid, it is enforceable only by a suit in equity in the name of the state to be instituted by the Attorney General. Act of May 26, 1933, Acts 1933, 1st Ex.Sess. c. 33, art. 12-A, § 11.

■ On the second question, it appears that the state auditor and certain other of the state officials who are defendants were residents of the Northern District of West Virginia at the time of their election to office, but that they now reside with their families at the state capitol in the Southern District, although in their announcements for re-election they refer to their residences as being in the counties from which they were originally elected, and have continued to vote in those counties. These officials are required by statute to reside at the state capitol. Code of W.Va.1931, c. 6, art. 5, § 4. And if the suit were instituted against them in their official capacities, there would be little question but that exclusive jurisdiction would reside in the district of their official residence. Butterworth v. Hill, 114 U.S. 128, 5 S.Ct. 796, 29 L.Ed. 119; Senitha v. Robertson (C.C.A.4th) 45 F.(2d) 51; Canon v. Robertson (D.C.) 32 F.(2d) 295; Hammer v. Robertson (D.C.) 291 F. 656. And we do not think that any different rule should be applied where the suit is not to enforce an official duty, but to enjoin the official from doing an act under color of his office which is beyond his official powers because violative of constitutional provisions. There is just as much reason for holding the official to be a resident or inhabitant of the district of his official residence in the one case as in the other; and the inconvenience and disturbance to the public business which would result from permitting an official to be sued away from the district of his official residence is just as great. To hold that, when an official is sued to enforce an official duty, he must be sued in the district of his official residence, but that, when he is sued to restrain him from acting as an official beyond the bounds of duty, he must be sued in some other district, because he was elected to office from that district and presumably intends to return thereto after his term of office has expired, would be to draw a distinction without basis in principle and one which would

not commend itself to men of practical minds.

The mere fact that the official may have an intention of ultimately returning to his original domicile, and may be permitted by state law to vote there, should not be held to make him a resident of that locality for purposes of suit with respect to a matter connected with the administration of his office. Mere voting right is not conclusive. Johnson v. Hoile, 205 App.Div. 633, 199 N.Y.S. 875. Residence and not domicile is the jurisdictional test of the statute; and we think that residence may not be ignored in favor of theoretical domicile, where the residence, as here, is that required by statute of an official and the suit relates to official conduct, even though it be alleged to transcend the legal bounds of official action.

Since, therefore, the sheriffs are merely formal parties and all of the other defendants have their official residences in the Southern District of West Virginia, exclusive jurisdiction to entertain the suit was in the court of that district. 28 U.S.C.A. § 112; 2 Cyc.Fed.Proc. 352; U. S. Exp. Co. v. Allen (C.C.) 39 F. 712; Railroad Comm. v. Burleson (D.C.) 255 F. 604.

It is argued that the suit is of a local nature because the privilege tax is made by statute a lien on the property of the railroad company; but the suit may not properly be considered one to remove the lien as a cloud from title. If it were, it would be a suit against the state. Appalachian Electric Power Co. v. Smith (C.C.A.4th) 67 F. (2d) 451, 456; Wood v. Phillips (C.C.A.4th) 50 F.(2d) 714, 717; Sanders v. Saxton, 182 N.Y. 477, 75 N.E. 529, 530, 1 L.R.A.(N.S.) 727, 108 Am.St.Rep. 826, 828. And such a suit could not be maintained. Constitution of U. S. Amendments, art. 11; In re Ayers, 123 U.S. 443, 505, 8 S.Ct. 164, 31 L.Ed. 216. Suit to enjoin the collection of a tax is sustained, not as an attack on the right of the state in the tax or the lien provided for its enforcement, but as a suit against the individual occupying a state office to enjoin unlawful action on his part. Smythe v. Ames, 169 U.S. 466, 518, 18 S.Ct. 418, 42 L.Ed. 819; Pennoyer v. McConnaughy, 140 U.S. 1, 10, 11 S.Ct. 699, 35 L.Ed. 363. As such it is clearly a personal action which must be brought in the district of the defendant's residence.

But even if it be assumed that this court has jurisdiction of the parties, we think, nevertheless, that the bill must be dismissed. As plaintiff has not exhausted its administrative remedies with respect to the valuation and assessment of its property for the purposes of taxation, it cannot invoke the aid of equity with respect to the complaint made of the property tax; and, so far as the privilege tax is concerned, there is no threat of irreparable injury, and against any effort to collect the tax plaintiff has an adequate remedy in the right to defend the suit for which the statute provides. So far as removing cloud from title is concerned, the suit, as already intimated, cannot be maintained for that purpose. Of these matters we shall consider first the question of administrative remedy, which was the third question stated in our analysis of the case.

It is well settled that equity will not afford relief to a taxpayer unless he has exhausted the administrative remedies provided by law for the correction of excessive or unjust assessments. Porter v. Investors' Syndicate, 286 U.S. 461, 468, 471, 52 S.Ct. 617, 76 L.Ed. 1226; Gorham Mfg. Co. v. State Tax Commission of State of New York, 266 U.S. 265, 45 S.Ct. 80, 69 L.Ed. 279; Keokuk & Hamilton Bridge Co. v. Salm, 258 U.S. 122, 42 S.Ct. 207, 66 L.Ed. 496; Pender County v. Garysburg Mfg. Co. (C.C.A.4th) 50 F.(2d) 732, 734. And we think there can be no doubt that an adequate administrative remedy was afforded plaintiff by provision for appeal from the decision of the Board of Public Works to the courts of West Virginia, which are given by the statute administrative power to correct valuations made by the Board. Section 12 of article 6 of chapter 11, of the Code of 1931 as amended by chapter 109 of the Acts of 1935, is as follows: "Section 12. Appeal from Valuation by Board.—Any owner or operator claiming to be aggrieved by any such decision may, within the time aforesaid, apply by petition in writing to the circuit court of the county in which the property so assessed is situated, or if such property be situated in more than one county then in the county in which the largest assessment of such owner or operator was made in the next preceding year, for an appeal from the assessment and valuation so made of all such property; and jurisdiction is hereby conferred upon and declared to exist in the court to which such application is made to grant, docket and hear such appeal; and such appeal, as to all of the property so assessed, as well as that situated in the county of the court so applied to, as that situated in the several other counties, shall forthwith be allowed by such court so applied to,

and be heard by such court as to all of such property as soon as possible after the appeal is docketed; but notice in writing of such hearing shall be given to the prosecuting attorney of each of the counties in which such property so assessed is situated, and to the state tax commissioner, at least ten days beforehand. Upon such hearing the court shall hear all such legal evidence as shall be offered on behalf of the state or any county, district or municipal corporation interested, or on behalf of the appealing owner or operator. If the court be satisfied that the value so fixed by the board of public works is correct, it shall confirm the same, but if it be satisfied that the value so fixed by said board is either too high or too low, the court shall correct the valuation so made and ascertain and fix the true and actual value of such property according to the facts proved, and shall certify such value to the auditor and to the secretary of the board of public works. The state or the owner or operator may appeal to the supreme court of appeals if the assessed value of the property be fifty thousand dollars, or more."

It is argued that this gives the courts power to relieve against excessive valuation, but not against discriminatory valuation; but it is clear that a discriminatory valuation of which complaint could be made is one which is too high in comparison with the valuations placed upon similar property of other taxpayers, and certainly the courts have the power under the statute quoted to consider other property in determining whether the valuation placed upon the property of the taxpayer is too high and to reduce such valuation if it is out of line with the valuation of other property. This would of course relieve against discrimination as well as against excessive valuation; and the Supreme Court of Appeals of West Virginia has expressly decided that the courts of that state have such power. The most recent case so holding is West Penn Power Co. v. Board of Review, 112 W.Va. 442, 164 S.E. 862. In that case the statute there under consideration provided that the Board of Review and Equalization should meet "for the purpose of reviewing and equalizing the assessment of the county as returned by the assessor", and, further, "if it shall be determined by such board that any property or interest is assessed at more or less than its true and actual value, it shall increase or reduce the value of such property, fixing it at its true and actual value." Sections 24 and 25, art. 3, c. 11, Code of 1931. And

with respect to appeal to the Circuit Court, the statute provided "If, upon the hearing of such appeal, it is determined that any property has been assessed for more than its true and actual value, the court shall, by an order entered of record, correct every such assessment, fixing such property at its true and actual value." The Supreme Court of Appeals held that the courts would correct a valuation which was not in excess of the real value of the property but too high when compared with other property which was systematically undervalued for purposes of taxation. The court said: "Matters of this sort are primarily administrative. By virtue of statute they are appealable here where the assessment is $50,000.00 or more. Code 1931, 11-3-25. Though doubting the right of the Legislature thus to clothe this court with authority and duty of reviewing assessments we have submitted to it because of long practice. Hodges v. Public Service Commission, 110 W.Va. 649, 654, 159 S.E. 834. * * * There remains for consideration a problem to be determined in the light of the 'equal protection of the laws' clause of the Fourteenth Amendment of the Constitution of the United States. The matter arises in this way. On the appeal, the circuit court of Brooke county decreed the assessment of $10,000,000.00 on the plaintiff's plant and real estate, as ascertained by the board of review and equalization, to be the true and actual value of said property. It is in evidence that since 1916, the real estate of the county has been assessed at about eighty per centum of its value. Appellants say that to assess their properties at one hundred per centum of their true and actual value, as ascertained by the board and the circuit court, while other properties generally are valued at 80 per centum of their true values, is a denial of the equal protection of the law, and therefore an unconstitutional discrimination against appellants. * * * Under the law, it is the duty of the assessor to assess property at its true and actual value. There is, of course, a general presumption that public officials do their duty as required by law, but here we have direct and uncontradicted evidence that a different basis than that of true and actual value has been generally employed in Brooke county for fifteen years. The presumption must yield to the fact as proved and undisputed. * * * The existence of the discrepancy appears clearly in the evidence. The fact that the assessor in his testimony unequivocally states that a basis of eighty per centum had

been generally employed instead of a true and actual value basis, brings this case within the rule as stated in cases cited that a complaining party is entitled to relief even though the advantage which other property owners have enjoyed has come to them by reason of a disregard of statutory requirements by public officials. We therefore reverse the order of the circuit court and remand the proceeding with direction that the assessment of $10,000,000.00 of real estate and improvements be reduced twenty per centum and that on that basis apportionment be made to the two owners as their interests may appear." See, also, Island Creek Fuel Co. v. Harshbarger, 73 W.Va. 397, 80 S.E. 504; Copp v. State, 69 W.Va. 439, 71 S.E. 580, 35 L.R.A.(N.S.) 669; State v. South Penn Oil Co., 42 W.Va. 80, 24 S.E. 688; Charleston & S. Bridge Co. v. Kanawha County Court, 41 W.Va. 658, 24 S.E. 1002; Wheeling, etc., R. Co. v. Paull, 39 W.Va. 142, 19 S.E. 551; Pittsburgh, C. & St. L. R. Co. v. Board of Public Works, 28 W.Va. 264; Pittsburgh, C., C. & St. L. R. Co. v. Board of Public Works, 172 U.S. 32, 45, 19 S.Ct. 90, 43 L.Ed. 354.

We do not think that the slight difference in phraseology of the statute providing for reviewing the assessments of property of public service corporations was intended to grant to the courts a power more limited than that held to exist in the cases cited. It is certainly more desirable that any excessive or discriminatory valuation be corrected by a court possessing administrative as well as judicial powers, than by a court possessing judicial powers alone, since a court possessed of administrative powers, upon finding that the valuation is improper, has the power to correct it, whereas a court without such powers, cannot make the proper correction, but must proceed by way of injunction. The fact that a court possessed of administrative powers might pass upon judicial as well as administrative questions in reviewing the assessment and making the correction is no reason for not requiring that relief be sought before such tribunal before resorting to a court of equity possessing judicial powers alone; for the administrative proceeding cannot be said to be exhausted so long as the administrative review provided by statute has not been invoked. See Prentis v. A. C. L. R. Co., 211 U.S. 210, 228–230, 29 S.Ct. 67, 53 L.Ed. 150.

This brings us to the fourth question, viz., whether suit can be maintained to enjoin the collection of the privilege tax. With respect to this tax, it is to be noted that the statute imposes the tax and the penalties for its nonpayment and declares both tax and penalties a lien upon the property of plaintiff. Revenue Act of 1933, Acts 1933, 1st Ex.Sess. c. 33, art. 12-A, § 10. Consequently no action of the court could prevent the imposition of the tax or the accrual of penalties; and, since no action of any officer is necessary to make them liens upon the property of plaintiff, the court cannot, by enjoining the action of such officer, prevent the liens arising. So far as the collection of the tax is concerned, it cannot be collected except by suit in equity to be instituted in the name of the state by the Attorney General. Section 11. As the plaintiff can obtain complete relief by defending any such suit which may be brought against it, it has no ground of irreparable injury to urge as a basis for enjoining the institution of such suit. Northport Power & Light Co. v. Hartley, 283 U.S. 568, 51 S.Ct. 581, 75 L.Ed. 1275; Keokuk & Hamilton Bridge Co. v. Salm, 258 U.S. 122, 42 S.Ct. 207, 66 L.Ed. 496; Boise Artesian Hot & Cold Water Co. v. Boise City, 213 U.S. 276, 29 S.Ct. 426, 53 L.Ed. 796; Bradford v. Hurt (C.C.A.5th) 84 F.(2d) 722, 724.

If the statute imposing the tax be unconstitutional, there is no reason for assuming that the courts of West Virginia will not so hold in any suit which the Attorney General may institute, and consequently there is no basis for apprehension of irreparable injury by plaintiff as a result of the institution of such suit. The identical question was before the Circuit Court of Appeals of the Fourth Circuit in Lawson v. Ætna Ins. Co., 41 F.(2d) 316, 318, in which injunction was sought to prevent an officer of West Virginia from bringing a suit under a statute of that state to enforce his order. The court, speaking through Judge Northcott, said: "A court of equity will not grant an injunction for the purpose of preventing a defendant from bringing a suit for injunction against the plaintiff, on the ground that the latter will suffer irreparable injury from erroneous and improper judicial action. In 1 High on Injunctions (4th Ed.) § 64, it is said: 'It is to be observed, however, that mere apprehensions or fears on the part of the person asking relief that the defendant may institute actions against him in the future will not warrant a court of equity in enjoining the bringing of such actions, nor will a court of equity have pow-

ers to grant an injunction for the purpose of preventing defendant in the injunction suit from bringing an action for an injunction against complainant in that suit, since equity will not entertain jurisdiction upon the ground that another court of competent jurisdiction may decide improperly.'" See, also, Hapgood v. Hewitt, 119 U.S. 226, 234, 7 S.Ct. 193, 30 L.Ed. 369; Essanoy Film Mfg. Co. v. Kane, 258 U.S. 358, 42 S.Ct. 318, 66 L.Ed. 658; Rensselaer & S. R. Co. v. Bennington & R. R. Co. (C.C.) 18 F. 617; Pomeroy's Equitable Remedies, § 642.

■ It is argued that the defense which plaintiff will be permitted to make in any suit instituted by the Attorney General will necessarily be made in the state court; but this does not authorize the federal court to take over the litigation by exercise of the injunctive power. If action is instituted by a state in a case properly arising under the Constitution and laws of the United States, it may be removed into the federal courts; but it may not be so removed merely because the defense so arises. Arkansas v. Kansas & Texas Coal Co., 183 U.S. 185, 22 S.Ct. 47, 46 L.Ed. 144. And this result may not be accomplished indirectly by the exercise of the injunctive power of equity. The fact that there is no adequate remedy at law in the federal courts in such case is immaterial. "The statute forbids resort to equity in the federal courts when they afford adequate legal relief. It does not purport to command that equitable relief shall be given in every case in which they fail to do so." Di Giovanni v. Camden Fire Insurance Company, 296 U.S. 64, 56 S.Ct. 1, 4, 80 L.Ed. 47.

■ On the fifth question, it is argued that there is jurisdiction in the court to remove the cloud from title arising from the imposition of the privilege tax, which is declared a lien upon the property of plaintiff; but, as heretofore pointed out, the suit cannot properly be considered as one to remove cloud from title. If it were it could not be maintained for two reasons. In the first place, if the statute is unconstitutional, its unconstitutionality is apparent upon its face and could not constitute a cloud. Appalachian Electric Power Company v. Smith (C.C.A.4th) 67 F.(2d) 451; Devine v. Los Angeles, 202 U.S. 313, 334, 26 S.Ct. 652, 50 L.Ed. 1046; Rich v. Braxton, 158 U.S. 375, 406, 15 S.Ct. 1006, 39 L.Ed. 1022; Hannewinkle v. Georgetown, 15 Wall. 547, 548, 21 L.Ed. 231; Peirsoll v. Elliott, 6 Pet. 95, 98, 8 L.Ed. 332; Pixley v. Huggins, 15 Cal. 127. In the second place, the real party in interest in a suit to declare the tax void and have the lien which the law imposes removed as a cloud is the state; and the state has not been sued and cannot be sued because of the provisions of the Eleventh Amendment to the Federal Constitution. Appalachian Electric Power Company v. Smith, supra; Wood v. Phillips (C.C.A.4th) 50 F.(2d) 714, 717; Sanders v. Saxton, 182 N.Y. 477, 75 N.E. 529, 530, 1 L.R.A.(N.S.) 727, 108 Am.St.Rep. 826, 828. We have considered the case of Yazoo & M. V. R. Company v. Gosjean (D.C.) 16 F.Supp. 276, to which our attention has been called by plaintiff's counsel; but we do not understand that the courts of equity of the United States have been given any general power to entertain suits against the several states because the validity of state taxes are involved. The question as to the validity of such taxes ordinarily arises in suits instituted to enjoin threatened action of state officials which would transcend constitutional powers. In the absence of threatened action on their part, there is nothing to which the injunctive power of the court can be addressed; and certainly the rights of the state in a lien for taxes imposed by its legislative body cannot be tried behind its back by the simple expedient of bringing against its administrative officers a suit to remove the cloud of the tax lien from plaintiff's property.

For the reasons stated, the bill will be dismissed.