## UNITED STATES v. GRONICH.

(District Court, W. D. Washington, S. D. February 24, 1914.)

### No. 7.

1. COURTS (§ 271*)—NATURALIZATION—CERTIFICATE—CANCELLATION—JURISDICTION—"RESIDE."

Judicial Code (March 3, 1911, c. 231, 36 Stat. 1101 [U. S. Comp. St. Supp. 1911, p. 150]) § 51, provides that with certain exceptions no person shall be arrested in one district for trial in another in any civil action before a district court, and with certain exceptions that no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, but where jurisdiction is founded only on diversity of citizenship, suit shall be brought only in the district of the residence of either plaintiff or defendant. Section 52 declares that when a state contains more than one district, every suit not of a local nature, in the district court, against a single defendant, inhabitant of such state, must be brought in the district where he resides. Act June 29, 1906, c. 3592, § 15, 34 Stat. 601 (U. S. Comp. St. Supp. 1911, p. 537) provides for the institution of proceedings to cancel citizenship certificates fraudulently or illegally procured to be brought in the district of citizen's last residence. *Held*, that the word "reside" as used in section 15, whether requiring a domicile or mere abode, contemplates at least a choice on the part of the naturalized citizen, to wit, a voluntary sojourning on his part; and hence a federal court of a district in which a naturalized citizen was incarcerated in a federal penitentiary, other than that in which he had previously resided, had no jurisdiction to cancel his certificate of naturalization.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 810; Dec. Dig. § 271.*

For other definitions, see Words and Phrases, vol. 7, pp. 6147–6150; vol. 8, p. 7787.]

2. COURTS (§ 270*)—FEDERAL COURTS—"INHABITANT"—"RESIDENT"—"CITIZEN."

The words "inhabitant," "resident," and "citizen," as used in Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1101 [U. S. Comp. St. Supp. 1911, p. 150]) §§ 51, 52, specifying the federal districts in which suits may be instituted in federal courts, contemplate the same condition, and all include the idea of domicile.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 810; Dec. Dig. § 270.*

For other definitions, see Words and Phrases, vol. 4, pp. 3594–3604; vol. 8, p. 7687; vol. 7, pp. 6161–6166; vol. 8, p. 7788; vol. 2, pp. 1164–1174; vol. 8, pp. 7602, 7603.]

In Equity. Petition by the United States against Jake Gronich, to set aside and cancel a certificate of citizenship. Dismissed.

Clay Allen, U. S. Atty., of Seattle, Wash., and George P. Fishburne, Asst. U. S. Atty., of Tacoma, Wash.

B. W. Coiner and Grant A. Dentler, both of Tacoma, Wash., for respondent.

CUSHMAN, District Judge. The United States petitions that the order of the probate court of the state of Ohio, for Mahoning county, made October 29, 1904, admitting respondent to citizenship, be va-

cated, and the certificate of citizenship issued therefrom be canceled. The petitioner alleges, as a ground therefor, that said order and certificates were secured by respondent through fraud. The respondent appears specially and objects to the court's exercising jurisdiction on the ground that he is not a resident or citizen of the Western district of Washington. The petitioner demurs generally to the plea to the jurisdiction. No question is made, upon either side, concerning the procedure, but both seek a determination upon the merits of the objection.

Respondent's plea discloses that, prior to July 15, 1912, he became domiciled in, and a permanent resident of, the city of Portland, in the state and district of Oregon, which domicile and residence he has never voluntarily relinquished or abandoned; that since said date he has been forcibly, and against his will, confined in the United States penitentiary in the Western district of Washington. While so confined, the process in this suit was served upon him in such prison. Upon the hearing it was admitted that respondent was sentenced to be imprisoned for the term of five years.

[1] Section 51 of the Judicial Code provides:

"Except as provided in the five succeeding sections, no person shall be arrested in one district for trial in another, in any civil action before a district court; and, except as provided in the six succeeding sections, no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

Section 52 in part provides:

"When a state contains more than one district, every suit not of a local nature, in the district court thereof, against a single defendant, inhabitant of such state, must be brought in the district where he resides. * * *"

Section 15 of the act of June 29, 1906 (1909 Supp. Fed. Stat. Ann. p. 373), in part, provides:

"That it shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured. In any such proceedings the party holding the certificate of citizenship alleged to have been fraudulently or illegally procured shall have sixty days personal notice in which to make answer to the petition of the United States; and if the holder of such certificate be absent from the United States or from the district in which he last had his residence, such notice shall be given by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the state or the place where such suit is brought. If any alien who shall have secured a certificate of citizenship under the provisions of this act shall, within five years after the issuance of such certificate, return to the country of his nativity, or go to any other foreign country, and take permanent residence therein, it shall be considered prima facie evidence of a lack of intention on the part of such alien to become a permanent citizen of the United States at the time of filing his application for citizenship, and, in the absence of countervailing evidence, it shall be sufficient in the proper proceeding to

authorize the cancellation of his certificate of citizenship as fraudulent, and the diplomatic and consular officers of the United States in foreign countries shall from time to time, through the Department of State, furnish the Department of Justice with the names of those within their respective jurisdictions who have such certificates of citizenship and who have taken permanent residence in the country of their nativity, or in any other foreign country, and such statements, duly certified, shall be admissible in evidence in all courts in proceedings to cancel certificates of citizenship."

No intention is shown by the latter section to make a different provision, as to the place of trial, than that made by sections 51 and 52, or that the word "reside," in section 15, was used to designate any different condition than when it is used in section 52, or when the word "inhabitant" is used in section 51.

Contrasting the expression "may reside at the time of bringing the suit" with "permanent citizen" and "permanent residence," all occurring in section 15, it is argued that, in using the first expression, something more fleeting and ephermeral is contemplated than by the use of the word "inhabitant" in section 51, or "resident" in section 52. The argument is not convincing. In the first place, no reason appears for making any such distinction. Further, from an examination of section 15 it would seem that the provision authorizing cancellation proceedings "in the judicial district in which the naturalized citizen may reside at the time of bringing suit" was inserted in order to expressly adopt for this special proceeding the general rule, made by section 51, in order to plainly show that it was not required or contemplated that the suit for cancellation should be brought in the court where the alien had been naturalized, and from which jurisdiction he might have removed, thus showing that the convenience of the defendant was more considered than comity for the court which naturalized him.

The provision fixing the venue at the residence of the naturalized citizen may have, also, been inserted to make clear the avoidance of the rule laid down in Re Hohorst, 150 U. S. 653, 14 Sup. Ct. 221, 37 L. Ed. 1211, and since its rendition, followed in many cases, to the effect that the general statute (section 51, supra), providing that suit shall not be brought in any other district than that whereof defendant is a resident, does not apply to suits in exclusive federal jurisdiction.

[2] "Inhabitant," "resident," and "citizen" contemplate the same condition in these acts, and all include the idea of "domicile." The reason for the use of the word "citizen," as applied to the state, and "resident" and "inhabitant," as applied to the judicial district, being plainly pointed out in Shaw v. Quincy Min. Co., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768; In re Hohorst, 150 U. S. 653, 14 Sup. Ct. 221, 37 L. Ed. 1211, supra; Galveston, etc., Ry. Co. v. Gonzales, 151 U. S. 496, 14 Sup. Ct. 401, 38 L. Ed. 248 (both majority and dissenting opinions). But, whether the word "reside," as used in section 15, be taken to require a domicile, or merely an abode, it contemplates choice upon the part of the naturalized citizen, a voluntary sojourning upon his part, and can in no sense be held to apply to an imprisoned convict, who is incarcerated wholly without his consent, or choice. Am. Surety Co. v. Cosgrove, 40 Misc. Rep. 262, 81 N. Y. Supp. 945, 946; Grant v. Dalliber, 11 Conn. 234.

It being apparent that the provision in section 15—for bringing suit where a naturalized alien resides at the time of bringing the suit—is for his convenience, it is clear that it would be more for the advantage of the prisoner that such a cause should be tried at his domicile, where, presumably, his friends and witnesses reside, than within the jurisdiction of his incarceration, where he would, in such a case as the present, imprisoned away from his domicile, be presumed to be among strangers. Defendant is held in this jurisdiction by process of the court, not by reason of, but against his will. No good reason would therefore appear—even in the absence of a statute—to except such a person from the general rule applicable to litigants, coming within a court's jurisdiction, exempting them from civil suit, while within such jurisdiction in answer to the court's process. Kaufman v. Garner (C. C.) 173 Fed. 550; U. S. v. Bridgman, 24 Fed. Cas. page 1230, No. 14,645; 32 Cyc. 494.

At times in the past it has been decided, under the poor laws, that incarceration in prisons or insane asylums would form an interruption of that continuity of residence requisite to the confined person's acquisition of a legal settlement by residence in a poor district (30 Cyc. 1094 [B] & [C]); but the contention never appears to have been made that such incarceration would deprive the detained person of the settlement or residence he had theretofore gained, much less force upon and give him a settlement or residence in the jurisdiction where imprisoned.

An order of dismissal will be entered.