## CANON et al. v. ROBERTSON, Commissioner of Patents. SENITHA v. SAME. SINCLAIR REFINING CO. v. SAME.

District Court, D. Maryland. March 30, 1929.

Nos. 1340, 1360, 1370.

Robert Ames Norton, of Pittsburgh, Pa., for plaintiffs Canon and another.

Hugo de Watteville Senitha, of New York City, in pro. per.

Pennie, Davis, Marvin & Edmonds, of New York City, for plaintiff Sinclair Refining Co.

A. W. W. Woodcock, U. S. Atty., of Baltimore Md., and T. A. Hostetler, of Washington, D. C., Sol., for Commissioner of Patents.

WILLIAM C. COLEMAN, District Judge. The sole question here presented is whether this court has jurisdiction of the Commissioner of Patents in three suits in equity brought under section 4915, of the Revised Statutes (44 Stat. 1335; 35 USCA § 63), to compel the Commissioner to issue certain patents. The question is raised by motions to dismiss the bills of complaint for want of jurisdiction. The Commissioner, although a resident of Chevy Chase, Md., and therefore a resident of this district, has refused to accept service of subpœnas there, claiming that he can be sued only in the District of Columbia, his official residence.

In a similar proceeding, Martin v. Robertson, Commissioner, No. 1352 of the equity docket of this court (no opinion filed), the Commissioner filed a motion to dismiss the bill, identical with the motions now before the court. After argument before Judge Soper, the motion was granted March 7, 1928. Complainants in the present suits have asked for a complete review of the question, which appears not to have been directly passed upon, at least in any reported case, in any other jurisdiction, and they have presented lengthy arguments, both oral and written,

as has also the Commissioner of Patents, in each case.

The Commissioner relies primarily upon the decision of the Supreme Court in Butterworth v. Hill, 114 U. S. 128, 5 S. Ct. 796, 29 L. Ed. 119, decided in 1885. This was a suit under section 4915 of the Revised Statutes, brought in the district of Vermont against the Commissioner of Patents, who was an inhabitant of the District of Columbia and was there served with process. He did not appear, and a decree of the lower court in favor of the complainant was reversed for want of jurisdiction. The court, in an opinion by Chief Justice Waite, decided three things: (1) That section 739 of the Revised Statutes (Act March 3, 1875), of which section 51 of the present Judicial Code is an amendment (28 USCA § 112), applied to suits brought under section 4915 of the Revised Statutes; (2) that the Act March 3, 1875, exempted a defendant from suit in any district of which he was not an inhabitant or in which he was not found at the time of the service of the writ; that such exemption might be waived, but, unless waived, the defendant need not answer, and would not be bound by anything which might be done against him in his absence; and (3) that the official residence of the Commissioner of Patents was at Washington, in the District of Columbia.

The court expressly declared that it did not decide, because unnecessary to do so, whether the jurisdiction of the District of Columbia court in suits under section 4915 was exclusive, saying, at page 131 of 114 U. S. (5 S. Ct. 797): "It is contended that the Supreme Court of the District of Columbia has exclusive jurisdiction of suits against the Commissioner brought under this section of the Revised Statutes. In the view we take of this case, however, that question need not be decided." But the court added the following, upon which the Commissioner primarily relies in the present cases, at page 132 of 114 U. S. (5 S. Ct. 798): "The bill in this case was filed against the Commissioner alone, and it does not appear that he was an inhabitant of the district of Vermont. The Patent Office is in the Department of the Interior, Rev. Stat. § 475 [35 USCA § 1], which is one of the executive departments of the government at the seat of government in the District of Columbia. Rev. Stat. § 437 [5 USCA § 481]. The Commissioner of Patents is by law located in the Patent Office. Rev. Stat. § 476 [35 USCA § 2]. His official residence is therefore at Washington, in the District of Columbia."

The text of that part of the Judicial Code with which we are now directly concerned (28 USCA § 112 (a) is as follows: " * * * Except as provided in sections 113 to 118 of this title [which have no bearing upon the question at issue], no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant. * * * "

Comparing the above language with the earlier enactment, it will be seen that a defendant can no longer be sued wherever found, but only in the place where he is an inhabitant. The precise question before us is, therefore: Does a United States government official have a dual personality for the purposes of jurisdiction under this section, namely, does he have both an official and a private personality, separate and distinct from each other, and, when sued officially, may he be said to inhabit or to reside only where he carries on his official duties, although he may have his home and live as a private citizen elsewhere?

It is well settled that the word "inhabitant," as used in the statute, includes the idea of domicile or residence. Shaw v. Quincy Mining Co., 145 U. S. 444, 12 S. Ct. 935, 36 L. Ed. 768; United States v. Gronich (D. C.) 211 F. 548; Thomas v. South Butte Mining Co. (C. C. A.) 230 F. 968. There is some authority to the effect that interference proceedings brought under section 4915, as opposed to purely ex parte proceedings, such as the present, may be maintained in any district where valid service can be had on the defendant without regard to his place of residence, and this has been held to be so under section 51 of the Judicial Code, on the theory that, since the suit arises under the patent laws of the United States, it is within the exclusive jurisdiction of the federal courts, and therefore is not affected by the statutory provisions which it is claimed were intended to apply only to specified civil suits of which the federal and state courts have concurrent jurisdiction. See, for example, Lewis Blind Stitch Co. v. Arbetter Felling Machine Co. (C. C.) 181 F. 974; and Thoma v. Perri, (D. C.) 205 F. 632. But, in view of the express language of section 51 above quoted, and of its proviso governing actions based upon diversity of citizenship, the soundness of this theory is at least doubtful, although the court does not now pass upon this question, because unnecessary to a decision of the precise point before it.

Even stronger dicta than that in the Butterworth Case, supra, in support of the Com-

missioner's contention that, unless he consents to be sued elsewhere, he must be sued in the District of Columbia, is to be found in at least three cases. In Schmertz Wire Glass Co. v. Western Glass Co., 178 F. 973, decided in 1909, District Judge Sanborn, then sitting in the Circuit Court for the Northern District of Illinois, Eastern Division, said, at page 975: "Unless the Commissioner actually appears to the suit, it must be brought in the District of Columbia, in one of its courts, that being his official residence. Butterworth v. Hill, 114 U. S. 128, 5 S. Ct. 796, 29 L. Ed. 119." This statement, however, is unquestionably dictum, because not necessary to the decision. The suit was originally adversary in character, but afterward became an ex parte one by union of the adverse interests. Motions were made to dismiss the suit on the ground that the patents were procured by fraud and collusion in the proceeding brought to establish them, because there were no adverse interests. The court denied the motions, finding no fraud, and also finding that the adverse parties were originally within the jurisdiction of the court. Thus the question of service upon the Commissioner was not involved.

The next decision in which the precise question is referred to is Barrett Co. v. Ewing, 242 F. 506, decided by the Circuit Court of Appeals for the Second Circuit in 1917. There Commissioner Ewing accepted service in New York, a district of which he was not a resident, and the court held that a waiver of the right to object to the jurisdiction was not against public policy, and was therefore binding. One of the objections made in support of the Commissioner's argument that he had no power to consent to be sued in New York was that the Supreme Court had declared in Butterworth v. Hill, supra, that the Commissioner of Patents is by law located in the Patent Office, and has his official residence at Washington, in the District of Columbia. To this the court replied, at page 508: "It may be said of the first suggestion that, in as much as the Commissioner's official residence is in the District of Columbia, suits which are brought against him in his official capacity should be commenced in that district by virtue of the provision which requires suits to be brought in the district of which the defendant is an inhabitant. *This, however, affords no light on the question whether he has the right, which other defendants are conceded to possess, to waive service in the district of his legal residence and to consent to be sued elsewhere.*" (Italics inserted.) Nothing more need be said to indicate that the above ex-

pression respecting the necessity for service in the District of Columbia is no more than dictum. Certiorari was denied in this case, 244 U. S. 661, 37 S. Ct. 746, 61 L. Ed. 1376.

Lastly we have the case of Hammer v. Robertson, Commissioner of Patents, 6 F.(2d) 460, a decision of the Circuit Court of Appeals for the Second Circuit, in 1925, affirming a decree of the lower court granting motions to dismiss the bills of complaint (291 F. 656; 300 F. 246). In this case the complainant, after having carried the appeals on his application to the Court of Appeals for the District of Columbia, under section 4915 prior to its amendment in 1927, and after an adverse decision by that court, brought a suit in equity in the Eastern district of New York against Commissioner Robertson. The court held no jurisdiction was acquired by mailing or serving a copy of the bill upon the Commissioner in the District of Columbia, since such service was outside of the jurisdiction of the federal court for the Eastern district of New York. The court said, at page 461 of 6 F.(2d):

"As to the first attempt, that is in form a plenary suit, not unlike Barrett v. Ewing, 242 F. 506, 155 C. C. A. 282, and several others, and the only question is whether the service of process confers jurisdiction; a point on which Butterworth v. Hill, 114 U. S. 128, 5 S. Ct. 796, 29 L. Ed. 119, has never been overruled and is binding on us. Therefore we hold that service on the defendant in Washington, D. C., was unavailing, and the decision below was right.

"Appellant urges that this renders R. S. § 4915, a farce, because it throws him back into the courts of the District of Columbia, which have already decided against him, *unless Mr. Robertson consents to be served in the district of his home, and he wants rights, not favors.* Even recourse to the Supreme Court of the United States is by recent legislation denied. Chott v. Ewing, 237 U. S. 197, 35 S. Ct. 571, 59 L. Ed. 913; Baldwin v. Howard, 256 U. S. 35, 41 S. Ct. 405, 65 L. Ed. 816. This is the appeal ad misericordiam, and must be addressed to Congress, which makes statute law, not to us who apply it." (Italics inserted.)

The anomalous result referred to by the court, and which it explained could only be remedied by Congress, has since been remedied by the 1927 amendment of section 4915 (44 Stat. 1335). It is clear that in this case, just as in all of the previous decisions above analyzed, the precise question raised by the present proceeding was nonexistent, and therefore the allusions to the necessity for

consent on the part of the Commissioner, before he may be served "in the district of his home," are dicta.

Should the court follow the dicta of these various cases, which is admittedly of a persuasive character, not only by virtue of what was originally said in the Butterworth Case, but by virtue of the construction which the Circuit Court of Appeals for the Second Circuit, as well as that which the learned jurist, the late Judge Sanborn, placed upon it in the Eighth Circuit? Indeed the dicta which we have from these last mentioned jurisdictions would seem to expand the dictum of Chief Justice Waite in the Butterworth Case, because in that decision he not only declined to pass upon the alleged exclusive jurisdiction of the Supreme Court of the District of Columbia, but merely said that, since the Patent Office is in the Department of the Interior, and is one of the executive departments of the government at the seat of government in the District of Columbia, and since the Commissioner of Patents is by law located in the Patent Office, it follows that his official residence is in the same place.

Complainants urge as a further ground for assumption of jurisdiction that the Commissioner should not now be allowed to say that he cannot be brought into this court because he personally gave to the Senate, at the time the amendment to section 4915 was before that body, a contrary expression of opinion. The text of this amendment of March 2, 1927, 44 Stat. 1335, is as follows:

"Whenever a patent on application is refused by the Commissioner of Patents, the applicant, unless appeal has been taken from the decision of the Board of Appeals to the Court of Appeals of the District of Columbia, and such appeal is pending or has been decided, in which case no action may be brought under this section, may have remedy by bill in equity, if filed within six months after such refusal; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the Commissioner to issue such patent on the applicant filing in the Patent Office a copy of the adjudication and otherwise complying with the requirements of law. In all cases where there is no opposing party a copy of the bill shall be served on the Commissioner; and all the expenses of the proceedings shall be paid by the applicant, whether the final decision is in his favor or not. In all suits brought hereunder where there are adverse parties the record in the Patent Office shall be admitted in whole or in part, on motion of either party, subject to such terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court may impose, without prejudice, however, to the right of the parties to take further testimony. The testimony and exhibits, or parts thereof, of the record in the Patent Office when admitted shall have the same force and effect as if originally taken and produced in the suit."

At the hearing before the committee on patents in the Senate, Sixty-Ninth Congress, Second Session, held December 21, 1926, when the amendment was under consideration, Commissioner Robertson outlined the procedure under the then existing law as contrasted with that proposed by the amendment, and made the following statement:

"The appeal from the Patent Office must be taken to the Court of Appeals of the District of Columbia. But if, after losing in the Court of Appeals of the District of Columbia, he wishes to afterwards file a bill under section 4915, he may do so, either in the Supreme Court of the District of Columbia or in the United States District Court in Baltimore. We permit the latter, since by filing there he will not have to go to the same Court of Appeals as before. In other words, he may bring his suit under section 4915 in Baltimore, and it is heard by the federal court there, the United States District Court. If the decision is against him, he can appeal to the federal Court of Appeals for that district, which is not the Court of Appeals for the District of Columbia, but the court at Richmond. So we have practically five appeals.

"Now, on the other part of the diagram, we show the appeals as they would be under the proposed bill. First, we have only one appeal within the Patent Office itself. We are going to combine the appeals within the Patent Office under the proposed bill, so that the Commissioner of Patents, the First Assistant Commissioner, the Assistant Commissioner, and the Examiners in Chief, shall constitute a board of appeals, so as to have but the one appeal, thereby doing away with one appeal within the Patent Office itself.

"After we get through the Patent Office, after that one appeal, if the losing party desires to appeal further, he may take one of the two courses shown by the diverging arrows. He may either take an appeal to

the Court of Appeals in the District of Columbia, or he may bring a suit in equity under section 4915, but he cannot do both. So we have the single simplified appeal in the Patent Office, and the losing party will have only the one appeal from the Patent Office, if he goes to the Court of Appeals. If, however, he prefers to go to the Supreme Court of the District of Columbia *or the United States District Court in Baltimore,* under section 4915, he will have in effect two appeals. So we have actually cut these appeals down to two or three, as the case may be."

When asked whether the bill in equity could not be brought in any district, the Commissioner replied:

" * * * It depends on whether it is an ex parte case or a contested case. If it is an ex parte case, the statute requires that service must be made on the Commissioner of Patents, and the Commissioner of Patents will not accept service in these suits all over the United States. The Department of Justice has not thought it proper to do that, so the Commissioner will accept service only in the District of Columbia, *or in Baltimore, near by.*" (Italics inserted.)

U. S. Senate Committee on Patents, report of hearing December 21, 1926, pp. 7 and 8.

■ There can be no question but that the amendment still leaves in doubt the exact intent of Congress when it used the words "the court having cognizance thereof." Unfortunately, the attempted clarification on the part of the Commissioner does not in fact clarify this particular phrase, and, while the Commissioner admitted the complainants' right to obtain jurisdiction over him, as Commissioner, within · the Maryland district, still the closing sentence above quoted would seem to indicate that all that the Commissioner intended to say was that he could be reached only by consent in this district. However this may be, the Commissioner's interpretation would not, and could not, be binding upon this court. Nor must any ambiguity in the statute be resolved against the Commissioner, unless such conclusion is clearly justified, even if it be assumed that the legislative body was induced, to some extent, at least, to pass the measure in reliance upon the representation that jurisdiction over the Commissioner would exist in this district, as a matter of right. It is, of course, true that this suit, being an ex parte proceeding, is not a contest between two people asserting different rights, but rather it is a suit to determine whether or not the applicants are entitled to patents. It is further true that

the argument advanced by the Commissioner, that he and his office will be subjected to great inconvenience, if required to answer to suits outside of the district, carries little weight in the present instance, because the proximity of Baltimore to the Patent Office nullifies the force that such argument might have, were the Commissioner compelled to attend in jurisdictions far removed.

■ The true answer to the question is to be found, not as a result of mere practical considerations, but in the meaning of the words employed in section 51 of the Judicial Code, which we have heretofore quoted and examined. We have seen that by the word "inhabitant," as there used, is meant one who is resident or domiciled. We have also seen that the Supreme Court has expressly decided that the Commissioner of Patents has his *official* domicile in Washington. At that time, both the Commissioner's private and official domicile were presumably in the same place, Washington. Now, however, they happen to be in different, although proximate, localities and jurisdictions. As to what the Supreme Court would have said in 1884. at the time of the Butterworth decision, had the present facts been squarely presented to it, it is idle to speculate, beyond the point of saying that the court has at least left with us a very strong intimation that it intended to distinguish between an *official* and *private* residence. Such distinction seems to this court to be logical, although, strange to say, there is an almost complete dearth of authorities touching upon this question. This is due, no doubt, for the most part, to the fact that suits by and against departmental and other government officials are usually controlled by special statutes. Except for such decisions as Tate v. Baugh (D. C.) 252 F. 317, wherein it was held that a suit against one as sheriff of a certain county in Tennessee, being an action against him as an individual, and not against the office, service might be validly obtained against him out of his own state, where he was not acting as sheriff, there are virtually no authorities on the subject in the federal reports.

Nor do text-books and treatises appear to have dealt with the precise question. And yet the construction which has been placed upon the language of the Supreme Court in the Butterworth Case by more than one jurisdiction, including two decisions of that eminent court, the Circuit Court of Appeals for the Second Circuit, in one of which certiorari was denied, although it, of course, does not follow that, had it been granted, this precise question would have been clarified, and

the fact that the construction has been relied upon and adopted ever since the Butterworth Case was decided—that is, for a period of 45 years—leads this court to the conclusion that such construction should be followed unless and until a more forcible argument is presented for departing therefrom.

An order, therefore, will be signed, granting the motion in each of the three cases. It follows that in case No. 1360 complainant's petition for a final decree pro confesso must be denied.