## KENTUCKY NATURAL GAS CORPORATION v. PUBLIC SERVICE COMMISSION OF KENTUCKY et al.
### No. 906.

District Court, E. D. Kentucky.

July 17, 1939.

Cary, Miller & Kirk, of Owensboro, Ky., for complainant.

Hubert Meredith, Atty. Gen., and J. W. Jones, Asst. Atty. Gen., for defendants.

John T. Metcalf, U. S. Dist. Atty., of Lexington, Ky., David W. Robinson, Jr., Gen. Counsel, Federal Power Commission, of Columbia, S. C., Louis W. McKernan, Principal Atty., Federal Power Commission, of New York City, and Robert M. Cooper, Sp. Asst. to Atty. Gen., for Federal Power Commission.

Faurest & Faurest, of Elizabethtown, Ky., amicus curiæ.

FORD, District Judge.

Complainant, a Delaware corporation, is engaged in the production and purchase of natural gas in the gas fields of Western Kentucky and Southern Indiana. By means of an extensive system of pipe lines, it transports the gas so procured in interstate commerce between the States of Kentucky and Indiana.

Kentucky gas is taken from what is known as the "Center" field in Hart County and other gas fields in that section of the State. The gas from this source passes immediately from gathering lines into a trunk pipe line several hundred miles in length, ranging from eight to twelve inches in diameter extending from Hart County westward then in a northern direction crossing the Ohio River near Henderson, Ky., and Evansville, Ind., thence northward through Indiana to a point beyond the cities of Terre Haute and Montezuma, where connection is made with the Indiana Gas Transmission line and the Panhandle Eastern Pipe Line.

Another supply of gas is derived from the "Troy" field in Southern Indiana from which a similar pipe line crossing from Indiana into Kentucky at or near Cannelton conveys a continuous flow of gas under high pressure into Kentucky connecting with the first mentioned line at a point south of Henderson, where the Indiana and Kentucky gas is commingled and turned north to Indiana or south into Kentucky as the varying conditions of the business from time to time require.

A third source of supply is from the Panhandle Eastern Pipe Line in Northern Indiana through which gas is received from the fields of Texas, Kansas and other states of the Southwest.

A continuous flow of gas under high pressure is maintained at all times throughout the entire system. The system is so equipped with automatic mechanisms that when the pressure is higher in Kentucky than in Indiana the gas flows from Kentucky to Indiana, and when pressure is lower in Kentucky the direction of the flow is automatically reversed.

Along the course of this interstate pipe line complainant sells gas in Kentucky and Indiana at wholesale, under high pressure, at city gates, to many local public utility companies, which in turn reduce the pressure according to their needs and sell and distribute the gas at retail to domestic and industrial consumers. The complainant sells no gas directly to consumers. With the exception of the Western Kentucky Gas Company, a wholly owned subsidiary, the complainant has no interest in or connection with any local distributing company operating in Kentucky. From June 14, 1934, to December 31, 1937, the affiliated company distributed only 772,055 M. cubic feet out of a total of 2,692,140 M. cubic feet of gas sold by complainant in Kentucky during that period.

The evidence shows that although prior to 1938 the complainant secured approximately 70 percent of its entire supply from the gas fields of Kentucky, only about 30 percent of its gas was sold in Kentucky. It is obvious, however, that substantial variation in such conditions, from time to time, is inherent in the nature of the business. This is evidenced by the fact that in the first three months of 1939 from 47 to 53 percent of the gas sold in Kentucky was brought in from outside the State, prin-

cipally from the Panhandle Eastern Pipe Line. In order to be assured of adequate supply under all conditions, the complainant has made contracts for large supplies of gas from the Panhandle Eastern Pipe Line, has extended its gathering lines to new gas fields in Illinois, and has adopted the policy of taking gas ratably and proportionately from the several sources of supply.

The defendant, Public Service Commission of Kentucky, has asserted and now asserts that, by virtue of section 3952-1 et seq. of the Statutes of Kentucky, it has the power and authority to exercise jurisdiction and control over the complainant with respect to all its Kentucky gas sales contracts, its Kentucky gas purchase contracts, its prices paid for gas and prices for which it sells gas in Kentucky and in all respects to regulate complainant's business in Kentucky as an intrastate utility. This litigation had its origin in two separate actions instituted by the complainant challenging the validity of certain orders made by the Commission by which it disclosed its purpose to exercise such jurisdiction. The actions were consolidated and by subsequent amendment of its bill of complaint the plaintiff converted the consolidated action into a proceeding under the Federal Declaratory Judgment Act, Judicial Code, sec. 274d, 28 U.S.C.A. § 400, seeking a declaratory judgment that complainant's business in Kentucky is immune from such regulation as is threatened by the Commission for the reason that it would create a forbidden burden upon interstate commerce and an infringement of the due process and equal protection provisions of the Fourteenth Amendment, U.S.C.A.Const.

Since the institution of the action, Congress has passed the Federal "Natural Gas Act", approved June 21, 1938, 15 U.S.C.A. §§ 717–717w, committing to the Federal Power Commission the regulation of all matters relating to the transportation and sale of natural gas in interstate commerce.

Complainant contends (1) that it is engaged solely in interstate commerce; (2) that its sale and delivery of gas from its interstate pipe lines, at city gates at wholesale, under high pressure, to local distributing companies is merely an incidental part of its interstate commerce and immune from state regulation or control; (3) that its business, being entirely interstate, is subject only to the regulation and control of the Federal Power Commission under the authority conferred by the Federal Natural Gas Act.

It is the contention of the defendant, Public Service Commission of Kentucky, (1) that, in transporting gas from fields in Kentucky to purchasers within the State, the complainant is engaged in intrastate business; (2) that such transactions are and should be treated as separate and distinct, notwithstanding their relation to interstate business, and as such are subject to regulation and control by the Kentucky Commission in all respects, as provided by the Kentucky Act.

■ It thus sufficiently appears from the record that there is an actual controversy entitling complainant to invoke the Declaratory Judgment Act. Ætna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000. Other prerequisites to Federal jurisdiction are present.

■ The record shows that the business of the complainant is a closely integrated transportation system which is fundamentally and predominantly interstate in character from beginning to end. In structure and operation, such continuity exists throughout the system that regulation at one point or control of a single activity would necessarily affect the whole structure. The sale and delivery of gas at wholesale from the interstate pipe line to local distributing companies is an integral part of the major enterprise, commerce between the states. Under such circumstances, regulation in the public interest is national rather than local, demanding a standard of uniformity unattainable except through a single paramount authority. See State of Missouri ex rel. Barrett v. Kansas Natural Gas Co., 265 U.S. 298, 44 S.Ct. 544, 68 L.Ed. 1027; Public Utility Comm. v. Landon, 249 U.S. 236, 39 S.Ct. 268, 63 L.Ed. 577; State Tax Comm. of Mississippi v. Interstate Natural Gas Co., 284 U.S. 41, 52 S.Ct. 62, 76 L.Ed. 156; Public Utilities Commission of Rhode Island v. Attleboro Steam & Electric Co., 273 U.S. 83, 47 S.Ct. 294, 71 L.Ed. 549.

■ Congress has seen fit to exercise its authority over this particular type of commerce by the enactment of the Natural Gas Act. The commerce clause of the Constitution, U.S.C.A.Const. art. 1, § 8, cl. 3, admits of no divided authority in the National field. "Wherever the interstate and intrastate transactions of carriers are so re-

lated that the government of the one involves the control of the other, it is Congress, and not the state, that is entitled to prescribe the final and dominant rule * *." See Currin v. Wallace, 306 U.S. 1, 11, 59 S.Ct. 379, 385, 83 L.Ed. 441, and cases cited therein.

■ The established course of business being predominantly interstate, the mere fact that some gas from the interstate stream is sold and delivered in the state of its origin affords that state no superior power to regulate or control the transaction. Pennsylvania v. West Virginia, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117, 32 A.L.R. 300; Public Utilities Commission of Rhode Island v. Attleboro Steam & Electric Co., supra; West v. Kansas Natural Gas Co., 221 U.S. 229, 31 S.Ct. 564, 55 L.Ed. 716, 35 L.R.A.,N.S., 1193; United Fuel Gas Co. v. Hallanan, 257 U.S. 277, 42 S.Ct. 105, 66 L.Ed. 234.

The contention of the defendant that the cases, People's Natural Gas Co. v. Public Service Commission, 270 U.S. 550, 46 S.Ct. 371, 70 L.Ed. 726, and Loan Star Gas Co. v. Texas, 304 U.S. 224, 58 S.Ct. 883, 82 L.Ed. 1304, prescribe a different rule seems untenable. Those cases are distinguishable from the instant case in that in each case the predominant business involved was intrastate. Interstate commerce involved was so negligible as to be merely incidental to a course of business clearly local in character.

■ Cases upholding certain forms of state taxation affecting interstate facilities and activities employed within the state are not in conflict with these views. It has been uniformly held that those engaged in interstate commerce must bear their just share of the tax burden in the states of operation and that many forms of state taxation, properly directed to that end, are not inhibited when fairly apportioned to activities within the state. See Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 550, 82 L.Ed. 823, 115 A.L.R. 944; Coverdale v. Arkansas-Louisiana Pipe Line Co., 303 U.S. 604, 58 S.Ct. 736, 82 L.Ed. 1043; Milk Control Board of Commonwealth of Pa. v. Eisenberg Farm Products, 306 U.S. 346, 59 S.Ct. 528, 83 L.Ed. 752.

■ The courts recognize a wide distinction between properly apportioned taxation and direct regulation such as is here sought to be exercised. " * * * not every local law that affects commerce is a regulation of it in a constitutional sense * *". Western Live Stock v. Bureau of Revenue, supra. Taxes affecting commerce only indirectly and remotely are not regarded as regulatory measures and hence admit of different treatment in the practical solution of the problem of reconciling conflicts which arise under our dual form of government.

■ My conclusion is that such local activities as are here shown to be present are insufficient to carry them into the field of State authority. Jurisdiction to regulate the business of the complainant herein involved has been conferred by Congress upon the Federal Power Commission. Its authority is paramount and exclusive.

■ Exercise of regulatory and supervisory functions in respect to the complainant's business not being within the constitutional power of the State Commission, it necessarily follows that assessments against the complainant for the maintenance of the Commission are unenforceable. In the case of Ingels v. Morf, 300 U.S. 290, 294, 57 S.Ct. 439, 441, 81 L.Ed. 653, it is said: "To justify the exaction by a state of a money payment burdening interstate commerce, it must affirmatively appear that it is demanded as reimbursement for the expense of providing facilities, or of enforcing regulations of the commerce which are within its constitutional power."

■ These conclusions, however, have no reference to the plenary power of the State Commission to regulate the distribution of gas by local distributing companies which purchase their supply at wholesale from the complainant, nor to the power of the Commission to require complainant to disclose to the Commission all information appropriate to any inquiry as to the relations between the complainant and its various wholesale customers, bearing upon the absence of "arm's length bargaining" or other facts and circumstances proper to be considered by the Commission in fixing reasonable rates governing local distribution. Natural Gas Pipeline Co. v. Slattery, 302 U.S. 300, 58 S.Ct. 199, 82 L.Ed. 276; Arkansas Louisiana Gas Co. v. Department of Public Utilities, 304 U.S. 61, 58 S.Ct. 770, 82 L.Ed. 1149.

By an amendment filed on March 2, 1939, the plaintiff sought to make the Federal Power Commission a party defendant. Summons was served in the District of

514

Columbia on each of the individual members, who promptly appeared specially and moved to dismiss the amended bill and quash the return of service of summons upon each of them.

The Federal Power Commission is one of the executive departments of the National Government located at Washington in the District of Columbia. The provisions of section 51 of the Judicial Code, 28 U.S.C.A. § 112, clearly exempt this Commission and the individual members thereof, in their official capacity, from suit in any other district. Butterworth v. Hill, 114 U.S. 128, 5 S.Ct. 796, 29 L.Ed. 119; Munter v. Weil Corset Co., 261 U.S. 276, 279, 43 S.Ct. 347, 67 L.Ed. 652; Robertson v. Railroad Labor Board, 268 U.S. 619, 624, 45 S.Ct. 621, 69 L.Ed. 1119; Appalachian Electric Power Co. v. Smith, 4 Cir., 67 F. 2d 451; Canon v. Robertson, D.C., 32 F.2d 295; Carr v. Desjardines, D.C., 16 F.Supp. 346, 347; Jamestown Veneer & Plywood Corporation v. National Labor Relations Board, D.C., 13 F.Supp. 405, 406; Bradley Lumber Co. v. National Labor Relations Board, 5 Cir., 84 F.2d 97; Yarnell v. Hillsborough Packing Company, 5 Cir., 70 F.2d 435, 436; Abe Rafelson Co. v. Tugwell, 7 Cir., 79 F.2d 653; Webster Co. v. Society for Visual Education, Inc., 7 Cir., 83 F.2d 47; Neirbo Co. v. Bethlehem Ship Building Corporation, 2 Cir., 103 F.2d 765.

The motion filed on behalf of the Federal Power Commission and its individual members must be sustained for lack of jurisdiction over them in this district.

Let formal findings of fact and conclusions of law, together with judgment in conformity herewith, be submitted for entry.