**SHELL OIL COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION,**
**Respondent.**

**No. 15900.**

United States Court of Appeals
Fifth Circuit.

June 29, 1957.

David T. Searls, R. H. Whilden, Houston, Tex., Oliver L. Stone, New York City, John Ben Shepperd, Atty. Gen. of Tex., Vinson, Elkins, Weems & Searls, Houston, Tex., Paxton Howard, Midland, Tex., William F. Kenney, New York City, for petitioner.

William L. Ellis, Atty., F. P. C., Willard W. Gatchell, Gen. Counsel, F. P. C., David S. Lichtenstein, Robert L. Russell, Attys., F. P. C., Washington, D. C., Mert Starnes, Asst. Atty. Gen. of Texas, amicus curiae.

Before BORAH, RIVES and BROWN, Circuit Judges.

BORAH, Circuit Judge.

This is a companion case to Deep South Oil Company of Texas v. Federal Power Commission, No. 15,849, 247 F.2d 882, in that Shell Oil Company, pursuant to Section 19(b) of the Natural Gas Act, 15 U.S.C.A. § 717r (b), is seeking review of the order of the Federal Power Commission which is the subject also of review in the Deep South case.

While the facts in the instant case are similar to those presented in Deep South, they are not identical thereto, and for present purposes they may be summarized as follows: Petitioner herein, Shell Oil Company, is engaged in the business of exploring for, producing, refining and marketing petroleum and petroleum products, and with respect to its Texas operations, it produces and sells "casinghead gas" at or near the wellhead from nineteen oil wells in the McElroy Field and eight oil wells in the Nome Field. It also sells "gas well gas" from one well in the latter field.

The casinghead gas which is produced in the McElroy Field is sold to Phillips Petroleum Company pursuant to a contract entered into between Phillips and petitioner's assignor on May 7, 1936. The contract provides, among other

things, that Phillips shall pay to the seller fifty percent of the net proceeds received from any sale of the gas which it sells from the gasoline plant. Prior to delivery under the contract the gas from each of the nineteen wells located in this field passes through the wellhead and into a flow line which is connected with a single central field separator (located on Shell's lease) where the gas is separated from crude oil and free water. Within a few feet from the point at which the gas leaves this separator it is metered and delivered and title thereto passes to Phillips. As in Deep South, the gas sold by petitioner is commingled in the purchaser's field pipelines with casinghead gas from a number of other wells in the field and the commingled mass of gas thereafter enters Phillips' Crane gasoline plant where it is scrubbed, compressed, and run through absorption towers for the removal of liquefiable hydrocarbons. The greater part of the gas is thereafter sold by Phillips at the tailgate of the Crane plant to El Paso Natural Gas Company. Inasmuch as this gas contains too high a percentage of hydrogen sulphide and carbon dioxide for use as a domestic burner tip fuel, El Paso further treats the gas which it purchases to remove these incombustible diluents, dehydrates the gas, and then turns it into one of its transmission lines for transportation in other States.

All of Shell's gas, both casinghead and gas well gas, which is produced in the Nome Field is sold to Texas Gas Pipeline Corporation, a subsidiary of Texas Gas Corporation, pursuant to a contract entered into on October 15, 1954. As in the contract between Deep South and Texas Gas, the contract for the sale of Shell's gas from the Nome Field similarly commits to the performance thereof all of the gas to be produced from Shell's leases in that field and provides that the gas is to be delivered in a full stream without the extraction of gasoline or other hydrocarbons. Likewise, as in the case of Deep South, the purchaser receives delivery of the casinghead gas at the outlet valve of field separators and the gas well gas is delivered at the well-

head. After taking title and delivery at these points, the purchaser then commingles the gas in its field pipelines with gas purchased from many other sources and transports the commingled mass to the Winnie processing plant which is owned and operated by its parent corporation. At the Winnie plant the gas is processed for the removal of water vapor and liquefiable hydrocarbons and thereafter Texas Gas Pipeline Corporation receives for interstate shipment a portion of the processed gas.

As we noted in the Deep South opinion, the proceedings in this cause as well as in Cases Nos. 15,849 and 15,884, were consolidated before the Commission for hearing and in both the presiding examiner's decision and the Commission's Opinion No. 284, it was determined that all sales of natural gas by Deep South, Shell, and Humble Oil, there under consideration, were sales of natural gas in interstate commerce for resale within the meaning of the Natural Gas Act and that each of the petitioners was a "natural-gas company" subject to the Commission's jurisdiction.

In this review proceeding, the basic contentions and the grounds asserted for setting aside the Commission's order are in essence identical to those urged by petitioner in the Deep South case, supra, and what we have said in that case is dispositive of those issues. However, and in view of petitioner's vigorous assertion that its sales to Phillips of casinghead gas which must be processed by both its purchaser and the subsequent buyer, El Paso, are not for "resale" but for "manufacture," we shall set forth in this opinion our reasons for rejecting this argument.

Petitioner relies strongly on the "purpose" clause of its contract with Phillips which provides that the casinghead gas sold thereunder is conveyed to the buyer for the purpose of manufacturing gasoline or such other products as may be manufactured at the Crane plant. It should not be overlooked, however, that this contract contains no limitation on the authority of Phillips to dispose of

the gas in any way it sees fit, and affirmatively provides that the buyer shall have the right to sell any or all surplus gas remaining after the "extraction" of gasoline and also provides for the payment to petitioner of fifty percent of the receipts from such sales. Thus, the true purpose of the contract includes the sale of the gas which remains after processing as well as the sale of extracted products. But be this as it may, the legal determination of the question rests not upon the parties' use of the word "manufacture," but upon the actual disposition of the gas. The record here clearly shows that the gas sold to Phillips is resold by it and thus, as in Deep South, there can be no question that petitioner is making sales in interstate commerce of natural gas for resale within the meaning of the Act.

Accordingly, the order of the Commission must be and the same hereby is affirmed.

Affirmed.

BROWN, Circuit Judge. I dissent for reasons hereafter to be filed. For dissenting opinion, see 247 F.2d 889.