**COLUMBIAN FUEL CORPORATION,**
Appellant,

v.

**PUBLIC SERVICE COMMISSION of**
Kentucky et al., Appellees.

Court of Appeals of Kentucky.

Nov. 20, 1959.

Rehearing Denied April 29, 1960.

Combs & Combs, C. Kilmer Combs, Prestonsburg, Loyd C. Haynes, Leslie D. Price, Charleston, W. Va., for appellant.

Jo M. Ferguson, Atty. Gen., J. Gardner Ashcraft, Asst. Atty. Gen., Morris E. Burton, Sp. Asst. Atty. Gen., for appellees.

STEWART, Judge.

The question to be answered that is determinative of this appeal is whether Columbian Fuel Corporation (herein referred to as "Columbian") is subject to the jurisdiction of the Federal Power Commission (herein referred to as "F. P. C.") or of the Public Service Commission of Kentucky (herein referred to as "P. S. C."). Columbian is a Delaware corporation with its principal place of business at 380 Madison Avenue, New York, New York. The lower court held that P. S. C. had jurisdiction over Columbian. This appeal is from that ruling.

This litigation was precipitated when orders were directed to Kentucky West Virginia Gas Company, United Fuel Gas Company and Columbian by P. S. C. to show cause why they should not be required to supply gas to the Allen and Dwale Gas Company of Prestonsburg. At a hearing on August 20, 1952, the evidence disclosed that Columbian had 19 wells then producing gas at Allen in Floyd County; that these wells were interconnected with other out-of-state sources of gas; and that it disposed of all its gas (other than that sold to individuals under easements) to Kentucky West Virginia Gas Company and United Fuel Gas Company. United Fuel Gas Company has had its name changed to, and now distributes gas as, Columbia Gas of Kentucky. The latter and Kentucky West Virginia Gas Company commingle the gas which they themselves produce with that purchased from appellant and other independent producers and make the following disposition thereof:

Approximately 89 per cent of the gas produced and bought by Kentucky West Virginia Gas Company is sold wholesale to the Equitable Gas Company of Pittsburgh, Pennsylvania, and nine per cent is purchased by the Louisville Gas & Electric

Company, a Kentucky company which supplies the City of Louisville and New Albany, Indiana. Kentucky West Virginia Gas Company owns no transmission facilities beyond the boundaries of this state; it, therefore, sends its gas to Pittsburgh through the pipeline formerly owned by United Fuel Gas Company but now owned by Columbia Gas of Kentucky. This company also supplies gas wholesale to five Eastern Kentucky municipalities and sells some gas directly to approximately 700 retail customers scattered along its pipelines.

United Fuel Gas Company, now Columbia Gas of Kentucky, produces gas in six states, including Kentucky, and purchases large quantities of gas from the Southwest. This gas is sold to industrial consumers and the general public in those states served by its system. Appellee asserts that at the time this proceeding was heard before P. S. C., United Fuel Gas Company sold at wholesale in Kentucky and to thousands of retail customers therein. The briefs do not reveal whether there has been any marked change in operations in this state since the formation of the new corporation. This fact, however, does not affect the legal question involved herein.

Appellant claims that under the Federal "Natural Gas Act" of June 21, 1938, found under the heading of Natural Gas Act, c. 15B, 15 U.S.C.A. §§ 717–717w, F. P. C. has sole power to control and regulate its wholesale activities and the disposition of all gas produced by it. For the position it takes in this respect, appellant particularly relies upon Section 717(b) of the Act which reads, in part:

"The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption * * * and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas

* * * or to the production or gathering of natural gas."

Section 717a(6) of the Act defines a natural-gas company as "a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale."

Three cases decided in 1957 by the United States Court of Appeals, 5th Circuit, uphold the theory advanced by appellant. They are Deep South Oil Co. of Texas v. Federal Power Commission, 247 F.2d 882; Shell Oil Co. v. Federal Power Commission, 247 F.2d 900, and Humble Oil and Refining Co. v. Federal Power Commission, 247 F.2d 903. A petition for a writ of certiorari was denied by the Supreme Court of the United States as to the last two cases. 355 U.S. 930, 78 S.Ct. 410, 2 L.Ed.2d 413. No appeal was taken as to the first. These three cases were companion cases, containing the same basic facts and contentions, so we shall review only the first one in detail. We shall hereinafter refer to Deep South Oil Company as "Deep South".

This case began when Deep South asked F. P. C. to declare that it was not a natural-gas company under the Natural Gas Act and to decree that its sales of natural gas to Texas Gas Corporation were not subject to regulation under the Natural Gas Act. F. P. C., as a result of a hearing, declared Deep South to be a natural-gas company, whose sales to Texas Gas Corporation were subject to regulation under the Act. Deep South then filed a petition for review before the United States Circuit Court of Appeals, 5th Circuit.

The undisputed facts were that Deep South is a small, unintegrated corporation engaged in the exploration for and the production of oil and gas. Its properties and facilities are located in Texas. All of its gas is sold, under contract, to Texas Gas Corporation. A few feet from where the gas leaves the cleaning devices operated by Deep South, it passes into Texas Gas Corporation's meters which are located on

Deep South's leases near the wellheads from which the gas flows. There it is measured and delivered and title thereto passes to Texas Gas Corporation. The gas then moves towards the purchaser's processing plant, and during this movement is commingled in the pipelines along the way with gas from other companies in the area. After processing, the gas is discharged into a common sales header, and by contract between Texas Gas Corporation and Texas Eastern Transmission Corporation, a portion of such gas flows in the latter's transmission lines for transportation and resale in interstate commerce.

The Deep South case, early in the opinion, referred to the congressional hearings held relative to the Natural Gas Act before its enactment into law, and emphasized the testimony which urged that Congress could not provide any protection as to the prices charged for natural gas unless the government controlled the prices of all companies which co-operate in bringing the gas from the wells where it is produced to the ultimate consumer where it is used. This excerpt on this point appears in the opinion, taken from Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 682, 74 S.Ct. 794, 799, 98 L.Ed. 1035: " '* * we believe that the legislative history indicates a congressional intent to give the Commission jurisdiction over the rates of all wholesales of natural gas in interstate commerce, whether by a pipeline company or not and whether occurring before, during, or after transmission by an interstate pipeline company.' "

That case then determined that when gas was sold by Deep South, under the circumstance, it had commenced its journey in interstate commerce. It pointed out that where gas from a seller's wells continuously flowed into a gathering system of a purchasing company, and became a part of a mass of gas which moved continuously from the gathering system into a processing plant, and from the outlet of such plant to both interstate and intrastate destinations, the sales of the gas at the well were not local sales, but were sales in "interstate commerce" within the meaning of the section of the Natural Gas Act defining a natural gas company as a person engaged in the transportation of natural gas in interstate commerce. That court then summed up its reasoning in this respect in these words: "The inescapable fact here then is that at least some portion of the gas sold by petitioner (Deep South) is resold to consumers outside the State of Texas. Consequently, there can be no question that petitioner (Deep South) is making sales for resale within the meaning of the Act." [247 F.2d 888.]

Deep South further argued that, regardless of whether the sales were in interstate commerce, the transactions fell within that portion of the language of Section 717(b) which excepts from F. P. C. jurisdiction the regulation of " * * * the production or gathering of natural gas." The court answered this argument with this statement taken from Interstate Natural Gas Co. v. Federal Power Commission, 5 Cir., 156 F.2d 949, 951: "* * * it (the Natural Gas Act) used language removing from any doubt that the Commission (F. P. C.) was not to have jurisdiction over properties used for production and local distribution or the activities of production and gathering. It did this by expressly providing that the act should not apply 'to the facilities used for such (i. e. local) distribution or to the production or gathering of natural gas' ". Deep South then elaborated on this statement in these words: "The exemption of production and gathering merely means that the physical activities, facilities and properties used by petitioner in the production and gathering of natural gas are not within the commission's (F. P. C.'s) power or regulation." [247 F.2d 889.]

█ We are unable to distinguish the Deep South case from the instant one. Actually, the former sold to a processing company, which in turn resold to a distribution company, whereas Columbian disposes of its gas direct to two pipeline systems ad-

mittedly engaged in interstate commerce. Thus, it may be said Deep South's transactions are farther removed from the ultimate consumer than are Columbian's. However, the same general principle governs the facts in Columbian that controlled the decision of the court as to the facts shown in Deep South. This is that, since Columbian's gas output is commingled with other gas, the vast bulk of which is destined for consumption beyond the confines of this state, the conclusion is inescapable that all its gas moves in interstate commerce.

Appellee asserts that some of the gas produced by Columbian is distributed to purchasers in this state, and that such transactions can and should be treated as separate and distinct, notwithstanding their relation to Columbian's interstate business, and such are subject to regulation and control by P. S. C. as provided by KRS Chapter 278. This same contention was advanced in Kentucky Natural Gas Corporation v. Public Service Commission of Kentucky, D.C.E.D.Ky.1939, 28 F.Supp. 509, affirmed 6 Cir., 1941, 119 F.2d 417. That case, we believe, effectively rebutted this contention with this language [28 F.Supp. 512]:

"The record shows that the business of the complainant is a closely integrated transportation system which is fundamentally and predominantly interstate in character from beginning to end. In structure and operation, such continuity exists throughout the system that regulation at one point or control of a single activity would necessarily affect the whole structure. The sale and delivery of gas at wholesale from the interstate pipe line to local distributing companies is an integral part of the major enterprise, commerce between the states. Under such circumstances, regulation in the public interest is national rather than local, demanding a standard of uniformity unattainable except through a single

paramount authority." Citations omitted.)

 For the reasons set forth, we are of the opinion that the Natural Gas Act vests control over Columbian in F. P. C. The commerce clause of the Constitution of the United States (art. 1, sec. 8, cl. 3) admits of no divided authority in the Federal regulatory field. "Wherever the interstate and intrastate transactions of carriers are so related that the government of the one involves the control of the other, it is Congress, and not the state, that is entitled to prescribe the final and dominant rule * * *." See Currin v. Wallace, 306 U.S. 1, 11, 59 S.Ct. 379, 385, 83 L.Ed 441, and the cases cited therein.

Wherefore, the judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.